## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ROCHE DIAGNOSTICS CORPORATION and ROCHE DIABETES CARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRIORITY HEALTHCARE CORPORATION D/B/A PRIORITY CARE, ET AL., <br><br> Defendants. | Civil Action No. 2:18-cv-01479-KOB-HNJ <br><br> ***OPPOSED*** |

## ROCHE'S MOTION FOR THE ISSUANCE OF
## INTERNATIONAL LETTERS OF REQUEST (LETTERS ROGATORY)

Plaintiffs Roche Diagnostics Corporation and Roche Diabetes Care, Inc. (together, "Roche") respectfully move this Court pursuant to 28 U.S.C. § 1781(b)(2) and Federal Rule of Civil Procedure 28 for the issuance of Letters of Request, a/k/a Letters Rogatory, in the form annexed hereto as Exhibit A. The proposed Letters, addressed to the Superior Court of Justice of the Province of Ontario, Canada, request that the Superior Court of Justice of the Province of Ontario cause requests for documents and a deposition to be served upon (i) ███████████████████████████; and (ii) ███████████ owner █████ (together, the "Witnesses").

███████████ is a Canadian company ████████████████████████████████████████████████ Defendants Priority Healthcare Corporation et al.

(collectively "Priority Care"). Earlier in this action, Roche served U.S. subpoenas on ▮ and ▮ at the New York address associated with ▮ ▮ U.S. National Provider Identifier ("NPI") registration number. Defendants filed a motion for a protective order challenging these subpoenas on relevance grounds, and this Court denied the motion, concluding that the subpoenas sought relevant and discoverable information under Federal Rule of Civil Procedure 26(b). Dkt. No. 64. Meanwhile, an individual residing at the address where the subpoenas were served told Roche that the Witnesses are based in Canada. The purpose of the requested Letters Rogatory is to obtain substantially the same information that was previously requested by the U.S. subpoenas, and whose relevance and proportionality was previously confirmed by this Court.

"In considering whether to issue letters rogatory," courts "appl[y] the liberal discovery principles contained in Rule 26(b)." *DHA Corp. v. BRC Operating Co., LLC*, No. 1:13-CV-3186-WBH, 2015 U.S. Dist. LEXIS 190512, at *2 (N.D. Ga. May 5, 2015). Here, the Court has already concluded that subpoenas requesting substantially similar information from the Witnesses meet the requirements of Rule 26. Roche respectfully contends that this Motion should be granted for that reason alone.

Furthermore, it is now clear that the information Roche is seeking from the Witnesses is even more directly material to Roche's claims than was previously

2

known. Although ███████████████ and NPI registration indicate that it is a New York company delivering Accu-Chek test strips from New York, Roche has learned that ████████ is a Canadian company operating out of Canada. The Accu-Chek products Roche sells in Canada are not labeled for sale in the United States and cannot lawfully be submitted for insurance reimbursement (i.e. "adjudicated") in the United States. The fact that Priority Care's ███████████ ████████████ is based in Canada suggests that Priority Care is unlawfully dispensing international Accu-Chek test strips and fraudulently adjudicating them as U.S. retail test strips. ████████████████████████████████ ████████████████████████████████████████████ ██████████████████████ Furthermore, several Priority Care entities are currently subject to stipulated injunctions barring them from selling international test strips made by a different manufacturer.

████████████████████████████████████████████ █████, adjudicated them as U.S. retail strips, and received tens of millions of dollars in insurance reimbursements for them. If some or all of these test strips were Canadian, this would mean that Priority Care committed tens of thousands of acts of fraud and caused Roche millions of dollars of damages beyond what is established by currently available evidence. Roche is entitled to the requested

3

discovery to determine the number of acts of fraud perpetrated and the amount of damages caused by Priority Care.

## BACKGROUND

### I. DEFENDANTS BELATEDLY IDENTIFY ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ACCU-CHEK STRIPS

In the amended complaint, Roche alleges that Priority Care submitted hundreds of thousands of fraudulent insurance claims falsely stating that it had dispensed retail Accu-Chek test strips when in fact it had dispensed not-for-retail ("NFR") test strips. Dkt. No. 90 ¶¶ 112–18. Before commencing this action, Roche served subpoenas on several Defendants requesting, among other things, documents identifying their suppliers of Accu-Chek test strips. *Id.* ¶¶ 119–21. After Roche obtained multiple orders to compel and an order holding these Defendants in contempt, Defendants finally produced on June 27, 2018 a collection of invoices documenting the purchase of approximately 144,000 fifty-count boxes of Accu-Chek strips from various suppliers. *Id.* ¶¶ 122–27. At that time, however, Defendants did not produce any invoices from Witness ▆▆▆▆▆▆▆.

Roche commenced this litigation on September 11, 2018. Dkt. No. 1. On October 2, 2018, pursuant to an order of this Court (Dkt. No. 22) Priority Care produced nearly 1,000 invoices that it had failed to produce in June, documenting the purchase of more than 450,000 additional boxes of Accu-Chek test strips. These invoices showed that ▆▆▆▆▆▆▆—a company Defendants had failed to

identify in response to Roche's earlier subpoenas—was in fact Priority Care's

███████████████████████████████. ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Declaration of Kim Ober ¶ 14.

Priority Care has provided no explanation for why it did not produce any invoices for ███████████ in response to Roche's earlier subpoenas. For the reasons discussed below, it is likely that Priority Care wanted to conceal the fact that ███████████ was a Canadian company.

## II. ROCHE SERVES U.S. SUBPOENAS ON THE WITNESSES AND THE COURT UPHOLDS THE SUBPOENAS

On October 31, 2018, Roche served non-party subpoenas on the Witnesses, ███████████ and its owner ███████. Declaration of Geoffrey Potter Ex. 1. The subpoenas requested documents identifying the entities from whom ███████████ bought Accu-Chek test strips and to whom it sold Accu-Chek test strips; quantities, prices, and other information regarding those transactions; and communications between ███████████ and Defendants. *Id.* Roche also requested the deposition of ███████. *Id.*

On November 6, 2018, Priority Care moved for a protective order seeking to quash the subpoenas (and other non-party subpoenas served by Roche) on the grounds that they were overly broad, sought irrelevant information, and sought

5

cumulative information. Dkt. No. 48. On November 20, 2018, Magistrate Judge Putnam rejected Priority Care's arguments and denied its motion for a protective order. Dkt. 64. The Court concluded that Roche's supplier subpoenas were "not unreasonable, overbroad, or irrelevant" and that they "relate[d] directly to the alleged fraudsters." *Id.* at 13-14. With a minor limitation on the time-frame of Roche's requests, the Court permitted non-party discovery to move forward. *Id.* at 16. Priority Care did not file objections to Magistrate Judge Putnam's Order.

### III. ROCHE IS INFORMED THAT THE WITNESSES ARE BASED IN CANADA

Although Roche's subpoenas to ███████ and ██████ have been upheld, Roche has been unable to locate these Witnesses in the United States. ████████████████████████████████████████████████████████████████ ██████████████████████████*See* Potter Decl. Ex. 2. However, this is the address of "Manhattan Mini Storage"—a self-storage facility. *Id.* Ex. 3. ██████ ████ has no place of business at this address.

As of the date Roche served its subpoenas on the Witnesses, the National Provider Identifier ("NPI") database maintained by the U.S. Department of Health and Human Services identified "████████" as ████████████ owner, and provided an address for ████████████ at a residential apartment in ████████████████████.

6

*Id.* Ex. 4.[1] Roche served its non-party subpoenas on the Witnesses at this address. *Id.* Ex. 1. An individual identifying himself as the brother of ▬▬ received the subpoenas and confirmed that the address had been used by ▬▬▬▬. However, this individual informed Roche that "▬▬▬▬▬ is a Canadian company and their address is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬ and the principal owner, ▬▬▬, also reside [sic] in Canada. My address was only used as a mailing address for receiving mail." *Id.* Ex. 5. Roche received no other response to its subpoenas. Subsequently, however, ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬, further confirming that ▬▬▬▬ is located in Canada. *Id.* Ex. 10.

### IV. FOREIGN-LABELED TEST STRIPS CANNOT BE SOLD OR ADJUDICATED IN THE UNITED STATES

The fact that ▬▬▬▬ is based in Canada raises serious questions about the nature of the products it supplied to Priority Care and the number of acts of insurance fraud associated with these products. ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ However, if, as appears to be

---

[1] The NPI registration for ▬▬▬▬ was deactivated on December 4, 2018, approximately one month after Roche attempted service of the subpoenas.

the case, these products originated in Canada, the invoices cannot be taken at face value.

Roche does not sell U.S. retail test strips in Canada. Rather, it sells test strips in packaging that is designed for Canada and not approved for sale in the United States. Declaration of Greg Smith ¶ 6. The United States Food and Drug Administration ("FDA") closely regulates and pre-approves the U.S. packaging and labels of medical devices such as test strips. *Id.* ¶ 5. Selling foreign test strips in unapproved packaging constitutes misbranding in violation of federal law. *Id.* ¶ 7; *see* 21 U.S.C. § 352(c).

Because they are not approved for sale in the United States, Canadian-labeled test strips cannot be reimbursed by U.S. insurance. Canadian test strips do not have U.S. National Drug Code ("NDC") numbers, so adjudicating them as retail test strips is an act of fraud. Ober Decl. ¶ 18. Like NFR test strips, however, Canadian test strips sell for list prices substantially lower than the U.S. retail list price. *Id.* ¶ 16. Thus, Canadian test strips, like NFR strips, can be used to commit lucrative insurance fraud. *Id.* ¶¶ 17–18. Roche believes that is what has happened in the case of the test strips Priority Care obtained from ▮▮▮▮▮▮▮▮. Roche is entitled to discovery on this issue.

## ARGUMENT

Federal district courts have the authority to issue letters of request (also known as letters rogatory) to courts and tribunals in foreign jurisdictions for assistance in obtaining discovery.  28 U.S.C. § 1781(b)(2); Fed. R. Civ. P. 28(b)(1)(B); *United States v. Khan*, 794 F. 3d 1288, 1307 n.18 (11th Cir. 2015) (noting that "28 U.S.C. § 1781(b)(2) empowers the federal courts to transmit" letters rogatory).  "In considering whether to issue letters rogatory," district courts "appl[y] the liberal discovery principles contained in Rule 26(b)."  *DHA Corp.*, 2015 U.S. Dist. LEXIS 190512, at *2.  A party opposing the issuance of a letter of request must provide some "good reason" for denial of the motion.  *Marcelo Cordeiro v. Alves,* No. 1:16-cv-23233-UU, 2017 U.S. Dist. LEXIS 171009, at *2 (S.D. Fla. Apr. 7, 2017); Wright & Miller, 8A Federal Practice and Procedure § 2083 (3d ed. 2015).  Here, the Court has already determined that the document requests contained in the Letters Rogatory meet the requirements of Rule 26.  There is no good reason to deny Roche's Motion.

## I.     THE COURT HAS ALREADY PERMITTED THE REQUESTED DISCOVERY

Roche's U.S. subpoenas issued to ▇▇▇▇ and ▇▇▇ requested substantially similar information to what Roche seeks here.  *See* Potter Decl. Ex.

1.[2] In its motion for a protective order, Priority Care argued that Roche's requests were overly broad and sought irrelevant and cumulative information that was more readily available from other sources, namely Priority Care. Dkt. No. 48, at 4–8. Magistrate Judge Putnam rejected Priority Care's arguments. Dkt. No. 64. He concluded that the requests in the supplier subpoenas were relevant to the issues in this litigation, were not overly broad or unreasonable, and were consistent with the requirements of Rule 26. *Id.* at 13–14.

Priority Care did not file any objections to Magistrate Judge Putnam's Order within the fourteen-day time period prescribed by Rule 72. *See* Fed. R. Civ. P. 72(a). Accordingly, Priority Care has waived any objections to the Order. *See Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("[W]here a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders."). The Court should grant Roche's Motion on the basis of Magistrate Judge Putnam's unchallenged ruling that the requested documents are relevant and proportional to the needs of the case and therefore discoverable under Rule 26. *See DHA Corp.*, 2015 U.S. Dist. LEXIS 190512, at *2 (noting that "principles contained in Rule 26(b)" apply to letters rogatory); *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910

---

[2] The subpoenas requested documents from January 1, 2014 whereas the current requests go to 2013, the beginning of the statute of limitations period.

(AJN), 2016 U.S. Dist. LEXIS 96721, at *3 (S.D.N.Y. July 25, 2016) (same); *Naiad Maritime Co v. Pacific Gulf Shipping Co.*, No. 16-4006, 2017 A.M.C. 362, 366 (D. Md. Feb. 8, 2017) (collecting cases and stating that "United States courts reviewing applications for letters of request and letters rogatory routinely apply the discovery principles contained in Rule 26 of the Federal Rules of Civil Procedure").

## II. THE REQUESTED DISCOVERY IS RELEVANT AND PROPORTIONAL

Magistrate Judge Putnam was correct that Roche's subpoenas to Witnesses ▮▮▮ and ▮▮▮ were relevant and proportional to the needs of the case. Indeed, it is now clear that the information Roche seeks is more than just relevant. It is directly material to Roche's fraud claims and damages calculations.

Roche seeks three categories of documents: (1) names and contact information of the suppliers and customers from whom the Witnesses bought and to whom they sold Accu-Chek test strips since January 1, 2013 (the beginning of the statute of limitations period for Roche's claims); (2) quantities, prices, and product information for all transactions of Accu-Chek test strips since January 1, 2013; and (3) communications concerning or involving Priority Care or its affiliates. In addition, Roche seeks to take the deposition of ▮▮▮ on these topics. The requested evidence is critical to proving Roche's claims and may only be obtained from the Witnesses.

11

A.  **Information About ▮▮▮▮ Sources of Accu-Chek Test Strips Is Directly Relevant to Liability and Damages**

Information regarding ▮▮▮▮ suppliers and ▮▮▮▮ transactions with these suppliers will materially assist Roche in determining how many fraudulent insurance claims Priority Care submitted. ▮▮▮▮

First, the fact that ▮▮▮▮ is a Canadian company with no place of business in the United States suggests that it is exporting Roche's Accu-Chek test strips from Canada into the United States. As discussed above, Roche does not sell U.S. retail test strips in Canada. Rather, it sells Canadian versions of its test strips, in packaging that is not approved for sale in the United States. Smith Decl. ¶ 6. Selling foreign test strips in packaging that is not pre-approved by the FDA constitutes misbranding in violation of federal law. *Id.* ¶ 7; s*ee* 21 U.S.C. § 352(c).

12

It is also a violation of the Lanham Act, which prohibits the sale of goods in packaging that is likely to confuse consumers. *See Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (MDG), 2015 U.S. Dist. LEXIS 189555 (E.D.N.Y. Nov. 6, 2015). Because of these legal risks, companies selling foreign-labeled test strips into the United States are likely to falsify invoices to conceal their violation of U.S. law. Accordingly, the product descriptions listed on ▮▮▮ ▮▮▮ invoices cannot be accepted at face value. ▮▮▮

▮▮▮

Because they are not approved for sale in the United States, foreign-labeled test strips cannot be reimbursed by insurance (among other things, they lack U.S. NDC numbers). Ober Decl. ¶¶ 17–18. Like U.S. NFR test strips, however, foreign test strips sell for list prices substantially lower than the U.S. retail list price. *Id.* ¶ 16. Thus, dispensing foreign test strips and fraudulently adjudicating them as U.S. retail test strips provides an enormous profit opportunity. Roche believes discovery will show that the Accu-Chek test strips ▮▮▮

▮▮▮

13

Second, evidence demonstrates that Priority Care has repeatedly distributed international versions of Roche's test strips to patients in the United States and falsely adjudicated them as U.S. retail test strips. ██████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████ Priority Care is also currently subject to an injunction in the Eastern District of New York for selling international versions of blood-glucose test strips manufactured by Abbott Laboratories, one of Roche's competitors. *Abbott Labs.*, No. 15-CV-5826 (CBA) (MDG), Dkt. No. 423 (E.D.N.Y. Apr. 29, 2016). Priority Care's history of fraudulently selling foreign test strips strongly indicates that the test strips it obtained from ██████████, a Canadian company, are also international test strips. This is particularly likely given Priority Care's failure to identify ██████████ in response to Roche's initial subpoenas and multiple Court orders.

Third, ████████████████████████████████████████ ██████████████████████████████████████████████████████████

14

████████████████████████████████████Each year, Roche publishes a list of wholesale acquisition cost ("WAC") prices for its Accu-Chek test strips, which represent the minimum prices Roche charged that year for the products on the list. Ober Decl. ¶¶ 5–6. From January 2014 through September 2018, Roche's WAC price for a fifty-count box of the relevant Accu-Chek retail test strips ranged between $58.92 and $78.07. *Id.* ¶ 9. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

Determining whether the test strips sold by ██████████ were international test strips is highly material to determining the number of acts of fraud for which Priority Care is liable. This information is also highly material to Roche's damages. Roche's damages are a direct function of the number of boxes of test strips that Priority Care fraudulently adjudicated, since Roche loses money (in the form of lost profits and out-of-pocket losses) for every act of fraud. Roche should not be required to take ██████████ invoices at face value, but rather should be permitted discovery into the nature of the products that it sold to Priority Care.

15

### B. Information About ████████ Customers Will Help Roche Determine the Scope of the Priority Care Enterprise

In addition to information about ████████ suppliers, the identities of ████████ customers of Accu-Chek test strips will help Roche determine the full extent of the Priority Care enterprise. Since the Priority Care enterprise is known to use shell entities with names meant to conceal their connection to Priority Care, it is essential to obtain information regarding ████████ customers to determine which entities bought test strips. Moreover, transaction information about ████████ sales to Priority Care entities will provide essential details about Priority Care's inventory of test strips.

### C. Communications Between the Witnesses and Priority Care Are Relevant to Roche's Claims

Finally, the Witnesses' communications concerning or involving Priority Care will also contain probative information regarding the products Priority Care was buying from ████████ and the entities and individuals involved in those transactions. This information is essential to show the "purpose and existence of the alleged enterprise" and "the relationships among those associated with the enterprise." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, No. 16-cv-00236-WHO (DMR), 2018 U.S. Dist. LEXIS 91336, at *20–21 (N.D. Cal. May 31, 2018). It is also likely to contain relevant information concerning the

nature of the products sold by ▮▮▮▮▮▮▮▮ to Priority Care, which, as discussed above, is directly material to liability and damages.

Priority Care's continual disregard for its discovery obligations makes it particularly important to obtain this evidence from third parties like the Witnesses. *See Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 377 (W.D.N.Y. 2006) ("Considering the nature of the allegations in the Complaint, plaintiffs should not be forced to forego or defer discovery of relevant information and rely upon the good faith of the defendants to produce complete and accurate records."). As Roche has documented elsewhere, Priority Care has flouted its discovery obligations in numerous ways. Dkt. No. 51, at 1–8. With respect to communications specifically, Priority Care has represented that it is not in possession of any communications with suppliers of Accu-Check test strips (Potter Decl. Ex. 7), when in fact Roche has obtained many communications directly from Priority Care's suppliers.

Perhaps most concerning, Priority Care has manipulated invoices it produced in discovery to conceal the involvement of Defendant Phillip Minga in the Priority Care enterprise (*e.g.*, *id.* Exs. 8–9). It was only after Roche received a non-party production from one of Priority Care's suppliers (*e.g.*, *id.* Ex. 9) that it discovered that Defendant Minga's name was deleted from invoices produced by

Priority Care. Priority Care's discovery misconduct throughout this litigation underscores the need for non-party discovery.

### D. A Deposition Is Necessary to Authenticate and Explain the Requested Documents

Finally, the deposition of ▇▇▇▇ will be necessary to authenticate any documents produced and to explain the details of those documents. This deposition is relevant and material for all the reasons described above with respect to the documents. To the extent the Court has concerns regarding the burden on the Witnesses to comply with Roche's requests, Roche is willing to reimburse the Witnesses for their reasonable expenses and other fees if and to the extent required by Canadian law in producing the requested documents and appearing for a deposition.

## CONCLUSION

For the foregoing reasons, Roche respectfully requests that the Court (1) sign and have the Clerk affix the seal of the Court to the Letter of Request at Exhibit A, and (2) enter the [Proposed] Order at Exhibit B granting this motion. If the Court grants this relief, undersigned counsel will arrange for the transmission of the executed Letter of Request to local counsel in Ontario, Canada, for submission to the Superior Court of Justice of the Province of Ontario.

Dated:     New York, New York
           March 19, 2019

                                      PATTERSON BELKNAP WEBB & TYLER LLP

                                      By: /s/ Geoffrey Potter
                                      Geoffrey Potter
                                      Aron Fischer
                                      Timothy Gray
                                          1133 Avenue of the Americas
                                          New York, New York 10036-6710
                                          Tel: (212) 336-2000
                                          Fax: (212) 336-2222

                                      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Geoffrey Potter
Geoffrey Potter