FILED
 2019 Oct-25 AM 10:56
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORPORATION, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | Case No. 2:18-cv-01479-KOB-HNJ |
| PRIORITY HEALTHCARE CORPORATION, et al., | ) ) ) | |
| Defendants | ) | |

## ORDER

This matter comes before the court on "Plaintiffs' Motion for an Order Freezing Certain Assets of Defendants." (Doc. 252.) On October 21, 2019, Plaintiffs filed the instant motion. And on October 22, 2019, because the court is engaged in an extended *habeas* evidentiary hearing, the court referred the Motion to Magistrate Judge Herman N. Johnson, Jr. (Doc. 253.) But considering the time-sensitive nature of this matter, the court **RESCINDS** the referral of this matter to Judge Johnson and instead reviews the motion based on parties' written submissions.

In its motion, Plaintiffs argue that Defendant Konie Minga possesses tens of millions of dollars that rightly belong to Plaintiffs, and that she and others working in concert with her are likely to conceal, dissipate, or spend some or all of that money before trial. For the reasons explained below, the court **GRANTS** Plaintiffs' motion for a temporary restraining order.

**Background**

On December 21, 2018, Plaintiffs Roche Diagnostics Corporation and Roche Diabetes Care, Inc., filed an Amended Complaint against Defendants alleging multiple violations under

the Racketeer Influenced and Corrupt Organizations Act, as well as claims of common law and statutory fraud, conspiracy to commit fraud, negligent misrepresentation, unjust enrichment, and money had and received. (Doc. 90.)

Roche, a diabetic test strip manufacturer, alleges that Individual and Corporate Defendants operate as a cooperative enterprise to defraud medical insurance companies by billing insurance companies for Roche test strips that are either not shipped to patients at all, or are different from—and priced much higher than—the products that patients actually receive. Roche avers that spouses Konie and Phillip Minga lead the enterprise, with Konie Minga owning the Corporate Defendants and Phillip Minga acting as the *de facto* director of the scheme. Roche specifically contends that Defendant Priority Healthcare Corporation ("PHC") owns or operates all of the other Corporate Defendants as subsidiaries for the purpose of generating, submitting, and processing fraudulent insurance claims related to Roche's test strips. Roche avers Defendants' scheme caused Roche to pay multiple millions in unwarranted rebates from which Defendants profit.

In support of its motion for a temporary restraining order, Roche submitted four affidavits and numerous pages of testimony and financial documents, among other records. Roche contends that this evidence portrays (1) Priority Care's fraudulent insurance-fraud scheme is now undisputed, with Priority Care's corporate witness Geneva Oswalt and former Defendant Christopher Daniel Knotts both stating under penalty of perjury that Roche's allegations of fraud are true; (2) the proceeds of this fraud are being held in identifiable investment accounts in the names of shell entities owned by Konie Minga that were created to conceal Defendants' assets; (3) Phillip and Konie Minga withdrew or transferred $15 million from their business accounts within days after Roche filed this lawsuit; and (4) Defendants doctored over one hundred

business records produced in discovery in an effort to falsely understate the magnitude of their theft.

**Standard of Review**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" to a motion for a preliminary injunction. Fed. R. Civ. P. 65(b)(1)(A). Temporary restraining orders "preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *United States v. Kaley*, 579 F.3d 1246, 1264 (11th Cir. 2009).

Temporary restraining orders may issue only if the movant establishes "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1125–26 (11th Cir. 2005). Though the court considers each of these factors in its determination, "demonstration of irreparable injury by the party seeking relief is an essential prerequisite to a temporary restraining order." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2951 (3d ed. 1999).

**Analysis**

A court may exercise its discretion to issue a temporary restraining order where the movant establishes "a real and immediate—as opposed to merely conjectural or hypothetical— threat of future injury." *Securitas v. Sec. Servs. USA, Inc. v. Whitt*, 2012 U.S. WL 1565984, at *25 (N.D. Ala. Apr. 26, 2012) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th

Cir. 1994)). After weighing the factors, the court finds the circumstances entitle Roche to a temporary restraining order freezing specific assets owned by Defendants.

### A. Roche has Demonstrated a Substantial Likelihood of Success on the Merits

Roche has established it is substantially likely to succeed on its unjust enrichment claims against Defendants. First and foremost, Roche supported the instant motion with evidence from former Defendant and PHC employee Daniel Knotts, the estranged son-in-law of the Mingas. Mr. Knotts admitted that the Defendants falsified insurance claims based upon his review of pertinent records. Second, the declaration of Forensic Accountant and Certified Fraud Examiner Kenneth Yorkmark demonstrates that the Minga's accounts likely contain profits derived from Defendants' alleged fraud. Third, Geneva Oswalt's testimony further corroborates Roche's claims that Defendants engaged in large-scale fraud. Taken as a whole, this evidence exhibits a substantial likelihood that Defendants defrauded Roche and were unjustly enriched.

As a result, Roche has demonstrated it will likely prevail on its claims for unjust enrichment and money had and received. Of course, this review comprises only a preliminary assessment, bereft of the more involved confrontation the Defendants may present at the preliminary injunction hearing. Even then, the hearing will not accomplish a full adjudication of Defendants' actual liability on the claims. But the evidence garnered thus far depicts Roche's substantial likelihood of success on the merits.

### B. Roche Will Suffer Immediate and Irreparable Injury Without a Temporary Restraining Order

Roche has established it will suffer immediate and irreparable injury in the absence of a temporary restraining order. Roche claims it is entitled to restitution and disgorgement based on unjust enrichment. Roche Compliance Analyst Kerri McAleavey avers Roche has paid between

approximately $30.7 and $32.3 million in unwarranted rebates because of Defendants' alleged fraud. Kenneth Yormark avers that Defendants have transferred, via circuitous routes, at least $32.7 million in profits from its alleged criminal enterprise to the specific, non-business accounts Roche seeks to freeze. Based upon Roche's unjust enrichment claim, and the court's upholding the viability of that claim in denying the Defendants' most recent dismissal motion, Roche essentially contends that the funds in the described accounts constitute its funds to which it is entitled pursuant to the restitution remedy.

The foregoing evaluation manifests the immediacy of the requested relief. The evidence Roche presented about the past conduct of the Mingas demonstrates the likelihood that, if left unimpeded, Defendants will conceal or dissipate some or all of the money Roche seeks to recover as restitution. In particular, the evidentiary record reflects that Phillip Minga transferred multiple millions of dollars within days after Roche filed its complaint. More importantly, representations exist that Defendants will use the disputed accounts to pay for personal expenses and other items. Accordingly, temporarily freezing Defendants' assets will protect Roche from immediate, irreparable injury.

The court recognizes the general rule that injunctive relief is inappropriate to preserve funds for monetary relief. *Rosen v. Cascade Int'l*, 21 F.3d 1520, 1528 (11th Cir. 1994). But the Eleventh Circuit has repeatedly held that this rule that applies to claims for legal damages gives way when equitable remedies come into play. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005).

**C. The Threatened Injury to Roche Outweighs the Harm to the Defendants**

The balance of the parties' harms weighs in Roche's favor. As discussed above, the evidence

presented establishes the very real likelihood that Defendants will conceal or dissipate assets acquired through their allegedly fraudulent enterprise, thus prejudicing Roche's potential for the equitable relief it seeks. Defendants, by contrast, will suffer little harm from the freezing of the identified assets. Roche preliminarily establishes the location of these assets in savings or passive investment accounts. Furthermore, Roche's motion does not seek to freeze an additional $6 million of the Minga's assets that are separate from the disputed accounts, along with approximately $800,000 in cash; these assets will remain available for any necessary business or personal expenses. Accordingly, any adverse impact of the temporary asset freeze on Defendants would be minimal. These considerations counsel in favor of a temporary restraining order.

Furthermore, the court will order Roche to post a $100,000 bond pursuant to Federal Rule of Civil Procedure 65, increased from its suggested $25,000 bond; Roche must present this bond no more than three days from issuance of this temporary restraining order.

### D. The Temporary Restraining Order Would Serve the Public Interest

Based upon the circumstances of this case, the court is satisfied that a temporary restraining order would serve the public interest. Roche alleges Defendants have engaged in extensive healthcare fraud, thus prompting a public interest guarding Roche's ability to recover its losses.

**Conclusion**

Considering the risk of immediate harm to Roche and the associated factors, the court concludes that a temporary restraining order is warranted to preserve the status quo until the court conducts a hearing on the application for a preliminary injunction.

Based upon the foregoing analysis, the court **GRANTS** Roche's motion and **ORDERS** as follows:

1. Pending further order of this court, Konie Minga, and her relatives, officers, agents,

servants, employees, and attorneys, and all other persons acting or participating with her, who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, or other device, are hereby **RESTRAINED** and **ENJOINED** from transferring, liquidating, encumbering, pledging, loaning, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, shares of stock, or other assets, that are held in the five accounts specified in Roche's motion (collectively the "**Accounts**");

2. Konie Minga, and her relatives, officers, agents, servants, employees, and attorneys, and all other persons acting or participating with her, whether acting directly or through any trust, corporation, subsidiary, or other device; and any person who receives any assets from any of the Accounts between October 21, 2019 and the date of receipt of this Order, **SHALL** immediately **RESTORE** such assets to the Accounts, and shall immediately provide written documentation of all such transactions to Plaintiffs and to the Court;

3. Plaintiffs may serve subpoenas, or requests for supplemental production, on the financial institutions responsible for the Accounts, for all transactions since November 1, 2018, and said subpoenas or requests may be returnable within five business days;

4. Within three business days of the entry of the court's Temporary Restraining Order, Plaintiffs **SHALL POST** an undertaking with the Clerk of the Court in the form of a bond, cash or check, in the amount of $100,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of any undue harm caused by this Temporary Restraining Order;

5. Defendant Konie Minga shall **SHOW CAUSE** before the court at the Hugo Black Federal Courthouse in Birmingham Alabama, on October 30, 2019, at 9:00 a.m. why a

preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be issued to require Konie Minga, and her relatives, officers, agents, servants, employees, and attorneys, and all other persons acting or participating with her, whether acting directly or through any trust, corporation, subsidiary, or other device, as follows:

A. Be enjoined and prohibited from transferring, liquidating, encumbering, pledging, loaning, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, shares of stock, or other assets in the Accounts until the final disposition, with prejudice, of this action;

B. Return to the Accounts any funds or assets disbursed or transferred from those accounts by check, wire, or other form of direct or indirect transfer after December 31, 2018.

C. Transfer the assets in the Accounts into accounts under the supervision and administration of the Court.

The court will enter a separate order setting this matter for a hearing on October 30, 2019.

**DONE** and **ORDERED** this 25th day of October, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE