IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROCHE DIAGNOSTICS CORP., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 2:18-CV-01479-KOB-HNJ |
| ) | |
| **PRIORITY HEALTHCARE CORP.,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This matter comes before the court on "Plaintiffs' Motion for an Order Freezing Certain Assets of Defendants." (Doc. 252.) On October 23, 2019, the court entered a temporary restraining order that froze five financial accounts associated with the Minga Defendants.[1] (Doc. 261.) Pursuant to the restraining order, the court set a hearing to consider whether to enter a preliminary injunction and maintain the freeze until the underlying case is resolved.

Plaintiffs and Defendants filed briefs with the court (Docs. 277, 276), and Plaintiffs presented evidence in advance via affidavit and during the hearing; Defendants could cross-examine any affiants they wished. For the reasons explained at the end of the hearing, as more thoroughly addressed below, the court will **GRANT** Plaintiffs' motion for a preliminary injunction to maintain the freeze on the Minga Defendants' accounts. (Doc. 252.)

**Background**

On December 21, 2018, Plaintiffs Roche Diagnostics Corporation and Roche Diabetes

---

[1] Plaintiffs' amended complaint (Doc. 90) brought claims against eleven individual Defendants and 29 corporate Defendants. The motion sought (Doc. 252) and the temporary restraining order froze (Doc. 261) only five accounts associated with two of the individual Defendants: spouses Phillip and Konie Minga.

Care, Inc., filed an amended complaint against 40 Defendants affiliated with Priority Healthcare Corporation, alleging multiple violations under the Racketeer Influenced and Corrupt Organizations Act, as well as claims of common law and statutory fraud, conspiracy to commit fraud, negligent misrepresentation, unjust enrichment, and money had and received. (Doc. 90.)

Roche, a diabetic test strip manufacturer, alleges that Individual and Corporate Defendants operate as a cooperative enterprise to defraud medical insurance companies by billing insurance companies for Roche test strips that are either not shipped to patients at all, or are different from—and priced much higher than—the products that patients actually receive. Roche avers that spouses Konie and Phillip Minga lead the enterprise, with Konie Minga owning the Corporate Defendants and Phillip Minga acting as the *de facto* director of the scheme. Roche specifically contends that Defendant Priority Healthcare Corporation ("PHC") owns or operates all of the other Corporate Defendants as subsidiaries for the purpose of generating, submitting, and processing fraudulent insurance claims related to Roche's test strips. Roche avers Defendants' scheme caused Roche to pay multiple millions of dollars in unwarranted rebates from which Defendants profited.

In support of its motion for a temporary restraining order and preliminary injunction, Roche submitted four affidavits and numerous pages of deposition testimony and financial documents, among other records. Roche contends that this evidence portrays that (1) Priority Care's fraud scheme is now undisputed, with Priority Care's corporate witness Geneva Oswalt and former Defendant Christopher Daniel Knotts both stating under penalty of perjury that Roche's allegations of fraud are true; (2) the proceeds of this fraud are held in identifiable investment accounts in the names of shell entities owned by Konie Minga that were created to conceal Defendants' assets; (3) Phillip and Konie Minga withdrew or transferred $15 million

from their business accounts within days after Roche filed this lawsuit; and (4) Defendants doctored over one hundred business records produced in discovery in an effort to falsely understate the magnitude of their theft.

**Standard of Review**

Federal Rule of Civil Procedure 65 governs preliminary injunctions. Based on this rule, a preliminary injunction is appropriate if the movant can establish: 1) a substantial likelihood that it will prevail on the merits; 2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; 3) that its threatened injury outweighs the threatened harm the injunction may cause the opponent; and 4) that granting the preliminary injunction will not disserve the public interest. *W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 956 (11th Cir. 1982).

**Analysis**

Because "the standard of review for a temporary restraining order is the same as the standard of review for a preliminary injunction," *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1229 (M.D. Ala. 2000), the court considers the same elements, and many of the same facts, featured in the temporary restraining order. Beyond challenging the four elements required for an injunction, Defendants also raise several other arguments against maintaining the asset freeze. The court considers the four injunction elements and each of Defendants' ancillary arguments below.

   1. **Preliminary Injunction Elements**

   A. *Roche has demonstrated a substantial likelihood of success on the merits.*

Through the evidence presented in its briefs and at the hearing, Roche has shown a high likelihood of success on its unjust enrichment claim against Defendants. First, Roche supported

the instant motion with evidence from former Defendant and PHC employee Daniel Knotts, the estranged son-in-law of the Mingas. Mr. Knotts admitted that the Defendants falsified insurance claims based upon his review of pertinent records. Second, the declaration of forensic accountant and certified fraud examiner Kenneth Yormark demonstrates that the Mingas' accounts likely contain profits derived from Defendants' alleged fraud. Third, Geneva Oswalt's testimony as Defendants' Rule 30(b)(6) witness further corroborates Roche's claims that Defendants engaged in large-scale fraud. Taken as a whole, this evidence exhibits a substantial likelihood that the Defendants unjustly enriched themselves at Roche's expense.

    B. *Roche will suffer immediate and irreparable injury without a preliminary injunction.*

Roche claims it is entitled to restitution and disgorgement based on unjust enrichment. Roche compliance analyst Kerri McAleavey testified that Roche has paid between approximately $30.7 and $32.3 million in unwarranted rebates because of Defendants' alleged fraud. Kenneth Yormark testified that the Minga Defendants have transferred, via circuitous routes, at least $32.7 million in profits from their alleged criminal enterprise to the specific, non-business accounts the court froze via the restraining order. Based on Roche's unjust enrichment claim, and the court's upholding the viability of that claim in denying the Defendants' most recent dismissal motion (Doc. 213), Roche contends that the money in the described accounts constitute unjustly gained funds that are subject to the equitable remedy of disgorgement.

But whether Roche is entitled to the disgorged funds only partially answers the question of whether unfreezing Defendants' accounts presents "actual and imminent" harm to Roche. *See Northeast Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Roche argues that the actual and imminent harm comes from Defendants' high likelihood of dissipating these funds before disgorgement is possible.

In response, Defendants deny the actual, imminent nature of Roche's harm by offering three arguments. Defendants first aver that Roche's delay in seeking this injunction suggests that Roche has not and will not suffer immediate, actual and irreparable harm. Because Roche filed the underlying suit thirteen months ago, Defendants question whether Roche "only became aware of Defendants' purported imminent attempts to conceal and dissipate assets after extensive discovery." (Doc. 276 at 9.) Defendants point to *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) for the proposition that a "delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing imminent irreparable harm."

Second, Defendants point to the assets that remain in the now-frozen accounts to show that Defendants are unlikely to dissipate any funds. (Transcript of Hearing at 24, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479, Oct. 30, 2019.) Third, Defendants argue that the motion to freeze the Mingas' assets "impermissibly asks the [c]ourt to sanction Defendants' alleged past conduct" when the purpose of an injunction is to prohibit damaging future conduct. (Doc 276 at 7.) *See also Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) ("The sole function of an action for injunction is to forestall future violations.").

On Defendant's first point—that Roche waited too long—Roche persuaded the court during the hearing that Defendants' ongoing attempts to hide the proverbial ball strongly suggest that Roche even now may not know the full extent of the Mingas' surreptitious actions. At some point, despite continually uncovering additional information, Roche decided that even though it did not yet have all the facts about the Defendants' assets, it could not wait any longer to request an injunction. Because Defendants' track record of obstructive behavior substantiates Roche's

5

position, the court finds that Roche's delay, to the extent one exists, does not militate against the immediacy of Roche's possible harm if these funds disappear.

Defendants' second argument, which points to the funds that remain in the now-frozen accounts to suggest that the Mingas are unlikely to dissipate the money, is facially unpersuasive. In today's financial environment, a person can electronically wire funds anywhere on the planet in a matter of a few seconds and a few keystrokes; Defendants apparently would have expected Roche to both discover and halt any attempt to dissipate the assets sometime between the first and last keystroke. Furthermore, in every case where a court has frozen a party's assets, the assets necessarily existed, or else the court would have nothing to freeze.

Turning next to Defendants' third argument—about the difference between sanctioning past conduct and preventing future harm—the court notes that past behavior often provides the best indicator of future behavior. And the affidavits and testimonies of Christopher Daniel Knotts and Kenneth Yormark, as well as the deposition of Geneva Oswalt, show a pattern of chronic, deceptive conduct. Although Mr. Knotts, Mr. Yormark, and Ms. Oswalt discussed events that occurred in the past, these occurrences manifest a high likelihood that, if left unimpeded, the Minga Defendants will conceal or dissipate some or all of the money Roche seeks to recover as disgorgement.

In particular, the evidentiary record reflects that Phillip Minga transferred multiple millions of dollars within days after Roche filed its complaint. More importantly, the Mingas transferred significant amounts of money from business accounts to personal accounts held under the dominion and control of Mr. and Mrs. Minga and contemporaneously purchased several big-ticket luxury items. Roche has persuaded the court that Defendants would likely use the now-frozen accounts to pay for personal expenses and other items—or even as forfeiture funds—to

the detriment of Roche's possible recovery. Accordingly, maintaining the freeze on Defendants' assets will protect Roche from immediate, irreparable injury that the court finds would be highly likely without the injunction.

C. *The threatened injury to Roche outweighs the harm to the Defendants*

The balance of the parties' harms weighs in Roche's favor. As discussed above, the evidence presented establishes the substantial likelihood that Defendants would conceal or dissipate assets acquired through their allegedly fraudulent enterprise, prejudicing Roche's potential for the equitable relief it seeks. Defendants, by contrast, would suffer little harm from maintaining the freeze. Roche has established the location of these assets in savings or passive investment accounts. Furthermore, Roche's motion does not seek to freeze an additional $6 million of the Mingas' assets that are separate from the disputed accounts, along with approximately $800,000 in cash; these assets will remain available for any necessary business or personal expenses. The parties have also agreed to unfreeze the TD Ameritrade account ending in -823, and Roche has posted a $100,000 bond "to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. Civ. P. 65(c). Accordingly, any adverse impact of the temporary asset freeze on Defendants would be minimal. These considerations counsel in favor of a preliminary injunction.

D. *The preliminary injunction would not disserve the public interest.*

Based upon the facts presented, the court is satisfied that an injunction would not harm the public interest in any way. Roche alleges that Defendants have engaged in extensive healthcare fraud, which prompts a public interest guarding Roche's ability to recover its losses. Accordingly, public policy considerations also militate toward maintaining the status quo until the case is resolved.

**2. Additional Arguments**

Beyond challenging the four preliminary injunction elements, Defendants raise several other arguments why the court should not maintain the freeze on Defendants' assets: (1) Roche seeks both equitable relief and monetary damages; (2) Roche has shown no nexus between its injury and the assets to be frozen; and (3) the frozen accounts are not parties to the underlying case. Defendants also argue that Mr. and Mrs. Minga's due process rights under the Fifth Amendment are implicated when they must choose between waiving the right to silence by testifying about the financial transfers on the one hand and the possibility of adverse inferences from silence on the other. The court addresses each of these arguments below.

*A. Seeking both equitable relief and monetary damages precludes a freeze.*

Generally, a district court may not freeze a party's assets when the party moving for the restraining order or injunction only seeks monetary damages at law. *Rosen v. Cascade Int'l*, 21 F.3d 1520, 1528 (11th Cir. 1994). But the Eleventh Circuit has repeatedly held that this rule, which applies to claims for *legal* damages, gives way when *equitable* remedies come into play. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005).

In this case, Roche specifically requested the equitable remedy of disgorgement in its claim of unjust enrichment in its amended complaint. (Doc. 90 at 67.) But Defendants argue that because Roche alternatively seeks money damages, then an injunction is inappropriate here. (Doc. 276 at 13.) Defendants cite *United Steelworkers of Am., AFL-CIO-CLC v. USX Corp.*, 966 F.2d 1394, 1404 (11th Cir. 1992) for the proposition that the "principal prerequisite for injunctive relief is the absence of an adequate legal remedy." Although equitable relief is improper if an appropriate legal remedy exists, the adequate remedy for unjust enrichment *is*

disgorgement, which is an equitable construction. *See SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.").

The Eleventh Circuit has squarely examined Defendants' essential argument and held that freezing a defendant's assets for disgorgement is proper even when a moving party seeks both legal and equitable remedies. "We acknowledge that [plaintiff] also seeks the legal remedy of civil damages," the Eleventh Circuit noted, "[b]ut, the asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement. We do not believe that the inclusion of a claim for civil penalty damages makes the remedies sought wholly legal and not equitable." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005).

In this case, Roche's pursuit of both legal and equitable remedies does not mean an asset freeze is inappropriate.

B.  *The moving party must show a nexus between its injury and the assets to be frozen.*

Defendants argue that freezing assets is improper if the moving party cannot "draw[] a sufficient factual connection between the accounts and the underlying alleged fraud." (Doc. 276 at 6.) Defendants point to an Eleventh Circuit opinion that held that even if the plaintiff's claim could result in an equitable remedy, the plaintiff's "identification of a specific amount of money to which it claims entitlement does not relieve it of the obligation to show the existence of specific funds subject to an injunction." *Noventa Ocho Ltd. Liab. Co. v. PBD Props. Ltd. Liab. Co.*, 284 F. App'x 726, 728 (11th Cir. 2008). The fact that Defendants pulled this quote from an unpublished opinion that applied Florida law and dealt with a non-equitable remedy undermines its applicability to this case.

The other opinions to which Defendants point are similarly distinguishable from the instant case. For example, Defendants cite *Mitsubishi Int'l Corp. v. Cardinal Textile Sales*, 14

9

F.3d 1507, 1521 (11th Cir. 1994), which held that "Ordinarily, the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." But *Mitsubishi* is inapposite because the plaintiffs in that case sought a writ of attachment based on a breach of a promise, not, as here, a preliminary injunction pursuant to an unjust enrichment claim. *Id*. Also, Roche sufficiently demonstrates the relationship between the frozen assets and the expansive fraudulent scheme described in the amended complaint, as substantiated by Mr. Yormark's testimony.

The court finds sufficient legal authority to freeze the assets sought here because of the magnitude of the alleged fraud and the Minga Defendants' efforts to hide both their actions and their assets. When a defendant's allegedly surreptitious behavior makes tracing funds difficult, "it is appropriate to freeze those assets where there is a just and reasonable inference they may be linked to the underlying activity." *SEC v. Asset Recovery & Mgmt. Tr., S.A.*, 340 F. Supp. 2d 1305, 1308 (M.D. Ala. 2004). Furthermore, when a moving party seeks disgorgement, it only needs to show "a reasonable approximation of a defendant's ill-gotten gains. . . . Exactitude is not a requirement." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). "So long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004).

In this case, Roche seeks between $30.7 and $32.2 million in disgorgement. Although the parties' counsel during the hearing could not establish exactly how much money is in the frozen accounts, Roche, through the forensic analysis of Mr. Yormark, reasonably asserts that the funds in the frozen accounts are linked to the Mingas' allegedly unjust enterprise. Roche has therefore

satisfied its burden of linking the Mingas' behavior to the money in the Mingas' accounts.

### C. Non-party accounts may not be frozen.

Defendants argue that because the four financial accounts at issue are owned by three LLCs, and these three LLCS are not parties to the suit, the court may not maintain the freeze on the accounts. (Doc. 276 at 14.) Although in general, "a court may not enter an injunction against a person who has not been made a party to the case before it," *E.A. Renfroe & Co. v. Moran*, 338 F. App'x 836, 838–39 (11th Cir. 2009), both common law tradition and Federal Rule of Civil Procedure 65 permit injunctions over non-parties that are in privity with parties to the case. Rule 65 states, in relevant part, that "persons who are in active concert or participation with" a party to a case are subject to injunction. The U.S. Supreme Court explained that this rule "is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13–14 (1945).

The Eleventh Circuit has held that "both Rule 65 and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction. . . . The second category, captured under the general rubric of privity, includes nonparty successors in interest and nonparties otherwise legally identified with the enjoined party." *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (internal citations omitted). Privity, in turn, contemplates traditional notions of due process and fairness and "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to bind the nonparty to the injunction." *Id. See also Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 n.38 (5th Cir. 1977) (defining a non-party in privity as "a person so identified in interest with a party . . . that he represents precisely the same right in

respect to the subject matter involved.")

In this case, the shared interests among the Mingas and the three LLCs are virtually identical. Mr. and Mrs. Minga are members of each of the LLCs, and Roche has provided significant evidence to demonstrate that the accounts at issue are "subject to their control." *See Regal Knitwear Co.*, 324 U.S. at 14; *see also* Doc. 252, Ex. 1–42.

The only other consideration regarding non-party injunctions concerns notice. Even non-parties who are in privity with a named party may not be enjoined unless they receive notice of the impending injunction. *ADT LLC,* 853 F.3d at 1355. But as parties to this suit and registered agents and members of the LLCs in question, Mr. and Mrs. Minga have certainly received sufficient notice in this case. *See, e.g.,* Doc. 252-20 (showing that Mr. and Mrs. Minga are the sole members of Minga Investments, LLC, and Mr. Minga is the registered agent.)

For these reasons, the court's authority to enjoin the Defendants in this case extends to the accounts that are subject to Defendants' control.

*D. Mr. and Mrs. Mingas' decision to not testify creates Fifth Amendment concerns.*

In their brief opposing the asset freeze, Defendants appear to raise two Fifth Amendment arguments. First, Defendants argue that "tension" exists "between the preliminary injunction proceeding and the temporary stay" that implicates the Fifth Amendment. (Doc. 276 at 17.) Second, Defendants' counsel contended that they wanted to put Mr. and Mrs. Minga on the stand to testify at the hearing regarding the frozen accounts, but considering the ongoing criminal case and because the Mingas would have invoked their Fifth Amendment right to silence at the hearing, Defendants had "one hand tied behind their backs." (*Id.*)

On the first point, because Judge Johnson stayed discovery pertaining to Mrs. Minga and Daniel Baker pending the resolution of the criminal matter, any tensions related to a temporary

stay are now relieved. (Doc. 281 at 23.) Regarding Defendants' second point, a party's Fifth Amendment rights remain intact unless he must choose between testifying or an adverse, "automatic entry of summary judgment." *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991). Because neither party has filed a motion for summary judgment in this case, issues related to testimony and potential adverse inference remain matters of discretion for the court.

The Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* (internal quotation marks omitted). Even so, considering the wealth of information the court received both before and during the hearing, the court had no need to draw any adverse inferences from the Mingas' absence at the hearing.

For these reasons, the court finds that Defendants' Fifth Amendment rights were not infringed.

**Conclusion**

Considering the risk of immediate harm to Roche, the court concludes that a preliminary injunction is warranted to preserve the status quo until the court, or the parties, resolve the underlying suit. The court finds that good cause exists to grant the requested preliminary injunction to order the assets subject to this order held in constructive trust to ensure the availability of the relief that Plaintiffs seek in this action, including the equitable remedies of disgorgement and restitution.

Based upon the foregoing analysis, the court **GRANTS** Roche's motion to impose a preliminary injunction (Doc. 252).

**DONE** and **ORDERED** this 7th day of November, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE