**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROCHE DIAGNOSTICS CORP., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-01479-KOB** |
| | ) | |
| **PRIORITY HEALTHCARE CORP.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

The American judicial system depends on the integrity of the participants, who seek the truth through the adversarial but good-faith presentation of arguments and evidence. A party who knowingly distorts or conceals the truth undermines the integrity of the process and maligns justice itself. Because deceit invariably leads to injustice, fabricating or falsifying evidence violates every "principle implicit in any concept of ordered liberty," *Anderson v. Sec'y for the Dep't of Corr.*, 462 F.3d 1319, 1324 (11th Cir. 2006), and merits the highest degree of sanction.

Regrettably, this matter comes before the court on claims that certain parties engaged in many types of sanctionable conduct, including defrauding the court by fabricating important evidentiary documents. Plaintiff Roche filed the instant motion for sanctions against Defendants Phil Minga, Konie Minga, and all 34 Corporate Defendants[1] in this case. (Doc. 362.) The court

---

[1] The Corporate Defendants are Priority Healthcare Corporation d/b/a Priority Care; Priority Care Pharmacy, LLC; Amory Priority Care Pharmacy, LLC; Priority Care Pharmacy Services, LLC; Priority Care Pharmacy Solutions, LLC; Amory Discount Pharmacy, LLC; Priority Care Pharmacy at Cotton Gin Point, LLC; Priority Care Pharmacy 2, LLC; Jasper Express Care Pharmacy, LLC; Vincent Priority Care Pharmacy, LLC d/b/a The Medicine Chest; Vincent Express Care Pharmacy, LLC; Vickers Priority Care Pharmacy, LLC; Carbon Hill Express Care Pharmacy, LLC; Bowie's Priority Care Pharmacy, LLC d/b/a Bowie's Discount Pharmacy;

ordered Defendants to show cause why the court should not grant Roche's motion. Phil Minga (Doc. 388) and Konie Minga and the Corporate Defendants (Doc. 389) both responded to the court's order;[2] Roche submitted a consolidated reply brief to both responses. (Doc. 396.)

Roche's motion for sanctions specifically asks the court to both grant default judgment against these 36 Defendants and schedule a hearing to determine the amount of damages. (Doc. 363 at 48.) Because the evidence before the court clearly and convincingly shows that Phil Minga, Konie Minga, Priority Healthcare (PHC), and Medpoint Advantage, LLC engaged in egregious bad-faith behavior by falsifying hundreds of key discovery documents and refusing to acknowledge their fraud, the court will GRANT Roche's motion regarding these four Defendants but will DENY the motion as to all other Defendants.

## Background

Roche—an international healthcare conglomerate and, most relevantly, a diabetic test strip manufacturer—filed the instant suit on September 11, 2018, bringing claims against approximately 40 Defendants for common law and statutory fraud, conspiracy to commit fraud,

---

Bowie's Express Care Pharmacy, LLC; B&K Priority Care Pharmacy, LLC; B&K Express Care Pharmacy, LLC; Monroe Pharmacy Corporation; Tombigbee Pharmacy, LLC; Main Street Drugs, LLC; Medical Park Discount Pharmacy, LLC; Burns Discount Drug Store, LLC; Burns Discount Drug Store, LLC; Ozark Family Pharmacy, LLC; Ozark Family Pharmacy, LLC; Medpoint Advantage, LLC; Medpoint Pharmacy Benefit Managers, LLC d/b/a Medpoint Pharmacy; Professional Healthcare Staffing, LLC; Razorback Pharmacy Services, Inc.; Priority Express Care Pharmacy, LLC; Yellowhammer Pharmacy Services Corporation; Priority Care Professional Staffing, LLC; Medpoint, Inc.; and Medpoint, LLC.

[2] The three Asset-holding Defendants—KJM Holdings, LLC; Minga Investments, LLC; and Capital Asset Management, LLC—also filed three identical response briefs to the court's show-cause order. (Docs. 390–92.) The briefs state that because Roche's motion "references them in multiple places, the Asset Holder Entities feel the need to respond to certain of the allegations." (Doc. 390 at 1–2.) But because Roche does not seek sanctions against these three Defendants, the brief(s) say nothing about the dispositive issue, and the court did not order these Defendants to show cause pursuant to Roche's motion, the court will not consider the Asset-holding Defendants' response.

negligent misrepresentation, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act. (Docs. 1, 90, 306.) Roche alleges that both Individual and Corporate Defendants submitted fraudulent rebate adjudications to insurance companies and pharmacy benefit managers (PBMs) for Roche's test strips, costing Roche more than $30 million. Roche avers that spouses Konie and Phil Minga lead the enterprise, with Konie Minga owning the Corporate Defendants and Phil Minga acting as the *de facto* director of the scheme. Roche specifically contends that the primary Corporate Defendant, PHC, owns or operates all the other Corporate Defendants as subsidiaries for the purpose of generating, submitting, and processing fraudulent insurance claims related to Roche's test strips.

The procedural history of this case is distinctly non-linear—featuring multiple complaints, dispositive and reconsideration motions, and stays of discovery, as well as a preliminary injunction and an ever-lengthening tally of former defense counsel. And according to Roche's instant motion for case-ending sanctions, the suit has also featured pervasively opprobrious behavior by multiple Defendants. To support its motion for sanctions, Roche alleges that Defendants engaged in the following actions:

- disclosing hundreds of digitally altered test-strip invoices in response to the court's discovery order;

- repeatedly refusing in another case to comply with a judge's order to compel discovery and incurring $100,000 in fines and a finding of contempt;

- making multiple false statements under oath in a deposition in another case;

- spoliating evidence by hiding and/or destroying thousands of boxes of test strips in the two days following service of process in this case;

- lying about the existence of inventory that Roche later independently discovered;

- surreptitiously transferring $15 million in assets within days after Roche filed the instant suit;

- violating court orders by failing to disclose businesses, assets, and accounts;

- sending bad-faith and false statements to third-party financial institutions to delay discovery;

- filing bad-faith motions to quash subpoenas and delay discovery;

- making up fake companies to create false documents produced in discovery;

- generally not complying with reasonable discovery requests;

- harassing a party/witness with a frivolous restraining order; and

- lying to the court about the purposes of financial accounts.

Roche pairs this exceptional number of allegations with a commensurately large body of evidentiary material, including invoices, depositions, hearing transcripts, emails, and financial documents. (Docs. 366-1–366-52.) Although Roche asks the court to sanction most of the Defendants in this case, it does not bring the instant motion against the three Asset-holding Defendants or eleven of the Individual Defendants.[3]

**Standard**

The court first notes that Defendants argue that Roche should have brought its motion for sanctions pursuant to Federal Rule of Civil Procedure 11(c), which provides the mechanism for sanctioning *attorneys'* conduct. (Doc. 388 at 8.) The court rejects this argument because Roche

---

[3] Roche excludes the following Individual Defendants from the instant motion: Wesley Minga, Christopher Knotts, Kristen Knotts, Daniel Baker, Heather Baker, William Austin, Sammy Phillip Carson, Kim Carson, Geneva Oswalt, Melissa Sheffield, and Ashley Tigrett. Roche also excludes the three Asset-holding Defendants—KJM Holdings, LLC; Minga Investments, LLC; and Capital Asset Management, LLC.

4

does not allege that any of the lawyers who have previously represented Defendants did anything to deserve sanctions. So, Rule 11(c) does not apply here.

Roche instead asks the court to issue case-ending sanctions based on Federal Rule of Civil Procedure 37 and the court's inherent sanctioning power. (Doc. at 28.) Rule 37 governs sanctions pursuant to discovery-related misconduct only, but a court may exercise its inherent sanctioning power to punish all types of contumacious conduct committed by parties, counsel, or both. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993). Inherent sanctioning power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co*., 370 U.S. 626, 630–31 (1962).

The Supreme Court warned that courts must "exercise caution in invoking [their] inherent power, and . . . must comply with the mandates of due process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Although sanction-issuing courts should ordinarily rely on procedural rules or statutes when these black-letter provisions clearly apply to the sanctionable conduct at issue, courts should instead exercise their inherent powers when "the conduct sanctionable under the Rules [is] intertwined within conduct that only the inherent power could address." *Id.* at 51. *See also Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power.") In this case, Roche alleges Defendants engaged a variety of both discovery- and non-discovery-related sanctionable conduct—most notably fabricating material evidence and lying under oath.

"The key to unlocking a court's inherent power [to sanction] is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "A party demonstrates bad faith by,

*inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). One court in this circuit explained that "[b]ad faith exists when the court finds that a fraud has been practiced upon it, or that 'the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument." *Allapattah Servs. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (citing *Chambers*, 501 U.S. at 46). A court's sanctioning power, even to invoke the "ultimate sanction" of terminating a case, "cuts both ways"—that is, it applies to both plaintiffs and defendants. *See Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409–10 (S.D. Ga. 1998) (listing cases where courts dismissed defendants for plaintiffs' behavior and entered default judgments for defendants' behavior.)

"[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007). *See, e.g., Vargas v. Peltz*, 901 F. Supp. 1572, 1581–82 (S.D. Fla. 1995); *Chemtall, Inc.,* 992 F. Supp. at 1410; *McDowell v. Seaboard Farms*, CASE NO. 95-00609, 1996 U.S. Dist. LEXIS 19558, at *27 (M.D. Fla. Nov. 4, 1996). In addition, "several federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or linchpin issue in the case." *People For The Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-cv-2899-T-36AAS, 2020 U.S. Dist. LEXIS 31853, at *13-14 (M.D. Fla. Feb. 25, 2020) (citation omitted). *See, e.g., Vargas*, 901 F. Supp. at 1582; *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991).

Because Roche alleges that Defendants engaged in a variety of bad-faith behavior, including doctoring "linchpin" evidence and committing perjury, the court will consider Roche's

allegations of Defendants' bad-faith conduct pursuant to the court's inherent sanctioning power rather than Rule 37. *See Qantum Communs. Corp.*, 473 F. Supp. 2d at 1269.

The Eleventh Circuit has not specified the appropriate evidentiary standard for a court to apply when exercising its inherent power to order case-ending sanctions pursuant to a party's misconduct. Some courts in this circuit have held that case-ending sanctions are necessary when clear and convincing evidence shows that the sanctionable conduct occurred and that lesser sanctions will not effectively punish the wrongdoer or deter similar conduct in the future. *See, e.g.*, *Chemtall Inc.* at 1408 (a "district court may use its inherent power to enter a default judgment only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits" (citing *Richardson v. Union Oil Co.*, 167 F.R.D. 1, 4 (D.D.C. 1996)); *see also Cadle Co. v. Moore*, 739 F.3d 724, 730 (5th Cir. 2014) (determining that clear and convincing evidence is the appropriate standard). *But see Zeltser v. Little Rest Twelve, Inc.*, 662 F. App'x 887, 889 (11th Cir. 2016) (finding that "no binding precedent" exists in the Eleventh Circuit that requires a court exercising its inherent sanctioning power over an *attorney* to apply the clear and convincing evidence standard; instead the court should merely "make specific findings as to the party's conduct that warrants sanctions"); *People For The Ethical Treatment of Animals, Inc.*, No. 8:16-cv-2899, 2020 U.S. Dist. LEXIS 31853, at *34 (noting that the appropriate standard for sanctioning parties "lacks discussion from the Eleventh Circuit.").

Regardless of the standard, the Eleventh Circuit has clearly pronounced that "district courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions." *Peer*, 606 F.3d at 1316. Out of an abundance of caution, the court chooses to

apply the clear and convincing evidence standard to Roche's claims of Defendants' bad-faith

behaviors. Although what constitutes clear and convincing evidence "is not susceptible to precise

definition," the standard falls on the spectrum between preponderance of the evidence and

beyond a reasonable doubt. *Collins & Aikman Floor Coverings, Inc. v. Interface, Inc.*, No. 4:05-

CV-0133, 2009 U.S. Dist. LEXIS 134835, at *16 (N.D. Ga. Feb. 25, 2009). "Clear and

convincing evidence is a demanding but not insatiable standard, requiring proof that a claim is

highly probable." *Nejad v. AG, Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016) (internal citation

omitted).

**Analysis**

The court first notes that, in response to Roche's significant body of evidence

demonstrating Defendants' bad-faith behavior, Defendants produced *no evidence of any kind*—

not so much as an affidavit or sworn statement. The court ordered Defendants to show cause why

sanctions are inappropriate, and in response, Defendants have only offered a handful of legal

arguments. Phil Minga stated, in a footnote and without further explanation, that he "does not

believe any additional evidentiary submissions are required" (Doc. 388 at 2), and Konie Minga

and the Corporate Defendants, also in a footnote, stated that "[i]f this Court is inclined to give

serious credence to Roche's motion," then "Defendants request an evidentiary hearing or the

opportunity to submit evidence in opposition to Roche's allegations." (Doc. 389 at 7.)

The court indeed gives serious credence to Roche's motion—so much credence, in fact,

that the court *ordered* Defendants to show cause why the court should not grant the motion.

(Doc. 382.) But instead of showing cause, Defendants spurned the very "opportunity to submit

evidence" the court presented them. (*See* Doc. 389 at 7.)

For Konie Minga and the Corporate Defendants, the show-cause order presented only the

most recent chance to submit evidence to combat Roche's allegations of Defendants' post-

complaint misconduct. Pursuant to the preliminary injunction evidentiary hearing before the court on October 30, 2019, Roche presented much of the same evidence it provides to support the instant motion. *See, e.g.,* (Docs. 276, 277.) But just as now, Defendants presented no evidence in response.

Nor did Defendants' responses to the court's current show-cause order explicitly invoke any Fifth Amendment right to silence. Although one of the briefs refers generally to "Fifth Amendment concerns" (Doc. 381 at 21) pursuant to Phil and Konie Minga's involvement in a related criminal matter in a neighboring forum, even an express invocation of the constitutional right of silence would not prevent the court from drawing adverse inferences from Defendants' continued silence. *See Eagle Hosp. Physicians*, 561 F.3d at 1304 (holding that the "decision to invoke the Fifth Amendment does not have to be consequence-free," and a court should give "proper evidentiary weight to reasonable adverse inferences" for a party's refusal to testify.) Here, none of the Defendants have invoked the Fifth Amendment right to silence. But even if they had, their conspicuous and repeated failure to produce even a scintilla of evidence to contradict any of Roche's assertions strongly suggests no such evidence exists.

Although Defendants produced no evidence in response to the court's show-cause order, they present two persuasive legal arguments to partially rebuff Roche's assertions. First, Roche's allegations are generalized and do not adequately explain each Defendants' role in the bad-faith activities. Second, many of Roche's allegations relate to activity that occurred either pursuant to another lawsuit or before Roche filed the instant case. The court addresses both arguments below.

### *Specificity of allegations and evidence*

Roche asks the court to sanction Phil Minga, Konie Minga, and all 34 Corporate Defendants. As the court explains below, Roche provides clear and convincing evidence of four Defendants' bad-faith behavior; but the assertions concerning most of the Corporate Defendants are far too generalized to be persuasive. Virtually absent from Roche's sanctions brief are specific allegations to all but two of the Corporate Defendants' putative misdeeds. By the court's count, Roche's brief refers to all "Defendants" 159 times and "Corporate Defendants" six times without specifying which of the Corporate Defendants allegedly acted in bad faith.

On the other hand, Roche's allegations and evidence pertaining to PHC; Medpoint Advantage, LLC;[4] Phil Minga; and Konie Minga are particularized and convincing. Whereas Roche generally alleges that the "Corporate Defendants" falsified documents, for example, Roche also provides deposition evidence to show that these same documents were "maintained in the custody of, and produced by, Phillip and Konie Minga, who together direct and oversee the Corporate Defendants' operations." (Doc. 363 at 17, 22.) *See also* (Docs. 284, 366-1 at 15–19, and 366-12 at 25) (featuring the testimony of Geneva Oswalt, Phillip Carson, and Christopher Daniel Knotts, who corroborate that Phil and Konie Minga managed and controlled PHC's financial transactions and physically gave Geneva Oswalt, PHC's Rule 30(b)(6) deponent, key documents to give to Roche.) Roche also provides evidence to show that either Phil Minga, Konie Minga, or both specifically manipulated evidence concerning Medpoint Advantage to minimize Medpoint Advantage's liability and damages. (Docs. 366 at 11–12; 366-

---

[4] Some apparent confusion exists about the distinction, if any, between "Medpoint, LLC" and "Medpoint Advantage, LLC." *See, e.g.,* Doc. 366-29 at 15. For the purposes of this memorandum opinion and accompanying order, the two are considered the same, such that any order directed at Medpoint Advantage, LLC applies with equal force to Medpoint, LLC, and vice-versa.

23; 366-24.) Ultimately, as explained below, Roche has provided clear evidence that Medpoint Advantage and PHC—acting through owners and operators Phil and Konie Minga—deliberately perpetrated fraud on Roche and the court by altering hundreds of critical discovery documents.

But the Supreme Court has admonished courts to "exercise caution" and "comply with the mandates of due process" when issuing sanctions pursuant to their inherent power. *Chambers,* 501 U.S. at 50. Although the links between PHC and all other Corporate Defendants appear to be strong, the court is reluctant to impute sanctionable behavior to all 34 Corporate Defendants when Roche has not given the court clear and convincing evidence to determine which Defendants assisted with—or even knew about—the Mingas' post-suit fraud. In short, the "mandates of due process" require that Roche provide more than generalized assertions. *See Chambers,* 501 U.S. at 50. Because Roche's lack of specificity fails to conclusively show that each Corporate Defendant committed sanctionable behavior, the court will DENY the motion for sanctions regarding all Corporate Defendants except PHC and Medpoint Advantage.

### *Conduct not before this court*

Defendants correctly point out that much of Defendants' potentially sanctionable activity took place before another court, prior to Roche filing the instant suit. For example, Roche's allegation of perjury draws from a deposition of Konie Minga taken pursuant to a case before the United States District Court for the Southern District of Indiana, *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 1:17-cv-00949, 2017 U.S. Dist. LEXIS 150853 (S.D. Ind.). Although Roche truthfully contends that Defendants failed to comply with orders to compel discovery (and incurred a finding of contempt and an order to pay Roche's attorneys' fees in doing so), these behaviors occurred pursuant to non-party discovery in the *Binson's* case that Roche brought before a colleague on the court (*Roche Diagnostics Corp. v. Binson's Hosp.*

*Supplies, Inc.,* No. 2:18-mc-00521-AKK (N.D. Ala.)) and in a neighboring forum (*In re: Subpoena Issued to Gathright Reed Medical Supply LLC, et al.*, No. 3:18-mc-00007 (N.D. Miss.))

Roche cites to *Mishkin v. Jeannine Gurian Tr. No. One*, No. 06-80489, 2008 U.S. Dist. LEXIS 20038, at *8 (S.D. Fla. Mar. 12, 2008) to support the proposition that this court should consider Defendants' behavior in the *Binson's* case in the overall sanctions analysis. In *Mishkin*, the court sanctioned a pair of fugitives for their behavior in consolidated cases and in the case that "form[ed]' the basis of these proceedings." *Id.* at *8. Roche also cites to *In re Costello*, 176 B.R. 592, 594 (Bankr. M.D. Fla. 1994), where the court sanctioned a party who filed several bad-faith cases in multiple courts to avoid paying her debts.

One court in this circuit opined that "[w]hen considering sanctions, a district court may consider all the circumstances surrounding the alleged violations, including a party's misconduct in related cases." *Qantum Communs. Corp.*, 473 F. Supp. 2d at 1275. But the Eleventh Circuit has not provided clear guidance on how "related" cases must be before a court may sanction a party's conduct that occurred in another case before another court. *But see Woodard v. STP Corp.*, 170 F.3d 1043, 1045 (11th Cir. 1999) (determining, in the context of sanctioning attorneys under Fed. R. Civ. P. 11, that "sanctions are properly applied only to cases before the court, not to cases in other courts.")

In both cases Roche cites, the sanctioning court considered behavior in other cases that shared obvious linkages to its own case, *e.g.*, the cases were consolidated or involved the same parties and issues. *Mishkin*, No. 06-80489, 2008 U.S. Dist. LEXIS 20038, at *8; *In re Costello*, 176 B.R. at 594. Here, by contrast, Roche does not explain how the *Binson's* case—to which Defendants apparently were not parties—relates in any meaningful way to the case at bar.

Furthermore, the fact that Defendants were held in contempt and ordered to pay Roche's attorneys' fees suggests that Defendants already received the appropriate punishment for at least some of their prior misdeeds. (*See* Doc. 363 at 13.) For these reasons, especially in the absence of clear guidance from the Eleventh Circuit or persuasive authority from sister courts, the court will exercise caution and only consider behavior pursuant to the instant case.

But, in a request that stretches the court's cautious tendency beyond its breaking point, Phil Minga also asks the court to ignore Roche's allegations pertaining to all activities prior to November 2019, when Roche filed its Second Amended Complaint. (Doc. 388 at 3.) He argues that because the court dismissed him for lack of personal jurisdiction pursuant to Roche's First Amended Complaint in September of 2019, he should not be liable for anything he did between September 2018, when Roche filed its original Complaint, and November 2019, when Roche filed its Second Amended Complaint to properly allege personal jurisdiction over him. This argument fails for the simple reason that Phil Minga's alleged misdeeds relate to the case currently before the court. (The court also observes that Phil Minga continued filing briefs in this case even during his two-month dismissal period. *See, e.g.*, Doc. 293.) Phil Minga's intermittent non-party status does not absolve his prior bad-faith actions in this case before the court.

### *Roche's uncontroverted evidence*

After removing the ineligible allegations of conduct not in this case from consideration, the following accusations remain: doctoring and spoliating evidence; harassing a witness; violating a court order to disclose assets; filing bad-faith motions; sending false statements to a third-party financial institution to delay discovery; failing to comply with discovery requests; and misleading the court about the purpose of certain financial accounts.

The court need not proceed any further than Roche's first allegation—that "Defendants' document production contains numerous demonstrable forgeries that have never been corrected, explained, or even acknowledged." (Doc. 363 at 9.) This allegation alone, demonstrated by clear and convincing evidence, is more than enough to require case-ending sanctions. *See Qantum Communs. Corp.,* 473 F. Supp. 2d at 1269.[5] The severity of this sanction is warranted in large part because the doctored evidence cuts to the very essence of Roche's substantive claims. Roche contends that Defendants purchased Roche's international and not-for-retail (NFR) test strips from suppliers but falsely sold and adjudicated the same test strips as domestic and retail versions. The apparent veracity of Roche's claims depends in large part on evidence—in the form of invoices from suppliers—showing that Defendants bought hundreds of thousands of Roche's international and NFR test strips. Roche presented the court with overwhelming evidence that certain Defendants, in an apparent attempt to reduce both liability and possible damages, edited these invoices to falsely show that Defendants did not purchase Roche's international and NFR test strips.

To support the contention that the Mingas doctored the invoices, Roche points to the testimony of Christopher Daniel Knotts, who managed PHC's warehouse in Amory, Mississippi. Mr. Knotts testified that as a warehouse manager, he kept all physical copies of incoming test strip-supplier invoices in a box. (Doc. 284 at 83.) Within three days after Roche filed suit, Phil

---

[5] When ordering the preliminary injunction to freeze Defendants' assets and then again when denying Konie Minga's baseless motion to reconsider, the court pointed to substantial evidence demonstrating "Defendants' recalcitrance" and "pattern of chronic, deceptive conduct" before the court. (Doc. 290 at 2–7; Doc. 297 at 3.) Although delving into Roche's remaining sanctions allegations is practically superfluous, given the immense weight of evidence showing that Defendants doctored hundreds of invoices, the court observes that Defendants' digital manipulation of evidence is only one activity in an unfortunately lengthy line of abuses before the court.

Minga asked Mr. Knotts to deliver the box—containing four years' worth of invoices—to Phil Minga's boardroom located across the street from the warehouse. (*Id.*) Mr. Knotts testified that he never saw the box again. Sometime later, Mr. Knotts provided Roche access to his PHC email account, which contained electronic versions of a small percentage of the same invoices he had given Phil Minga. (*Id.* at 84.) Pursuant to the court's order on September 17, 2018 for Defendants to explain their adjudications of Roche's test strips (Doc. 22), Phil and Konie Minga gave Roche hundreds of scans—apparently derived from the box of invoices that Mr. Knotts put in the boardroom—purporting to show PHCs receipt of thousands of boxes of Roche's test strips.

But a side-by-side comparison of the invoices from the email account and the invoices provided by the Mingas reveals obvious—and troubling—differences.

Accompanying its motion for sanctions, Roche first presents a set of two versions of invoices of Roche test strips from supplier Par Nasa to Defendant Medpoint, LLC in Amory, Mississippi. (Docs. 366-21, 366-22.) On the invoices Roche obtained through Mr. Knotts's email account, each shipment is addressed to Phil Minga. On the invoices supplied by the Mingas pursuant to the court's discovery order, blank, awkwardly situated gaps appear where Phil Minga's name apparently had been. The documents are identical in every other way, featuring the same dates, names, addresses, inventory numbers, and costs. Roche provides seven examples of this apparent digital erasure on invoices representing about $60,000 worth of inventory. (Doc. 366-22.)

Next, Roche provides what appears to be an invoice from supplier Surplus Diabetic with a reference to Defendant Medpoint Advantage, LLC deleted from the scan, as well the bottom line apparently amended to incorrectly show that Defendants still owed the full balance of the transaction. (Doc. 366-23.)

Roche further presents dozens of invoices from supplier Current Trade that feature all kinds of apparent and obvious modifications. Although both versions of each invoice appear to derive from the same original documents—because they share identically positioned features such as tracking numbers, dates, transaction numbers, and prices—the Mingas' discovery productions appear to change the "to" and "from" addresses, names of the shippers and recipients, outstanding payment amounts, email addresses, and—perhaps most tellingly— whether the shipped inventory were international/NFR test strips or domestic/retail test strips. (Docs. 366-25–366-28.)

Defendants' response to this evidence is less than persuasive. Konie Minga and the Corporate Defendants argue as follows:

> At most, Roche has shown that there are two versions of invoices that exist. There is no evidence that the invoices differ because of intentional or bad faith conduct by any of the Defendants, and the invoices may have even been altered by someone else. Further, if any invoice is in fact shown to have been altered by any defendant, neither Roche nor Knotts claims to have personal knowledge of that Defendant's intent in doing so.

(Doc. 389 at 14.) And inexplicably, Mr. Minga offers no explanation whatsoever about the fabricated invoices. His 20-page response to the court's show-cause order fails to even mention, much less attempt to refute, Roche's allegations.

In sum, Defendants' entire response to Roche's overwhelming body of evidence demonstrating Defendants' fraud is to suggest that (a) perhaps the Mingas had wholesome motives in tediously altering hundreds of invoices before giving them to Roche, or (b) maybe some unknown person digitally manipulated the invoices in such a way that coincidentally undermines Roche's substantive claims against these Defendants.

Roche persuasively counters Defendants' lack of evidence and pair of implausible hypotheticals with the following explanation.

16

Defendants' motives were obvious: Obscuring Phillip Minga's and Medpoint Advantage's liability and erasing evidence of the extent of their fraud. Roche's allegations in this action hinge on the fact that Priority Care submitted well over 400,000 fraudulent insurance claims for retail test strips. The key documentary evidence for the fraud is that the Corporate Defendants' invoices show that they purchased from suppliers and dispensed to patients NFR test strips instead of retail test strips. By doctoring the Current Trade invoices to remove references to international and NFR test strips, Defendants sought to falsely understate the extent of their fraud and reduce the damages that Roche would be able to prove.

Doc. 363 at 19. The testimonies of Christopher Daniel Knotts, Geneva Oswalt, and Phillip Carson provide additional evidence to support Roche's motion for sanctions. The court ultimately finds that the unexplained existence of two sets of invoices conclusively establishes, by clear and convincing evidence, that Defendants engaged in sanctionable, bad-faith activity.

Furthermore, Defendants have compounded their bad-faith behavior by steadfastly refusing to correct or even acknowledge their initial fraud. Roche first raised the fake invoice issue on December 21, 2018 in its First Amended Complaint (Doc. 90 at 47). On December 27, 2018, Roche asked Defendants to produce "[a]ll documents and communications concerning [y]our alteration of invoices" (Doc. 366-29). In response, Defendants objected because the request for production was "argumentative and unproven," "disproportionate to the needs of the case," and "overly broad and unduly burdensome; [it] is not reasonably calculated to lead to the discovery of admissible evidence; and [it] seeks documents and communications that are not relevant to the claims and defenses in this case." (Doc. 366-30.) Roche raised the issue again in its notice pursuant to Federal Rule of Civil Procedure 30(b)(6). (Doc. 366-31 at 5.) But Defendants' 30(b)(6) deponent, Geneva Oswalt, deflected Roche's allegations during her deposition and stated that she "had no reason to investigate" the apparently fake invoices. (Doc. 366-1 at 14.) In the sixteen months since Roche first brought the flagrantly falsified discovery

documents to Defendants' attention, Defendants have alternately misdirected, stonewalled, or obfuscated every demand to correct or explain their obvious fraud.

### *Punishment and remedy*

Because Roche has clearly and convincingly established that Defendants doctored hundreds of critical discovery documents, the court must next determine the appropriate sanction to reflect the relative gravity of Defendants' bad-faith behavior. *See Eagle Hosp. Physicians*, 561 F.3d at 1307 (concluding, on appeal, that the district court's sanction was "commensurate with the level of misconduct.") *See also Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (determining that when a party has engaged in especially egregious conduct, the court should avoid "the vain gesture of first imposing . . . ineffective lesser sanctions" before terminating the case.)

The Mingas' behavior in this case is especially egregious because it directly undermines the purpose of the judicial system: to determine facts and administer justice accordingly. Any attempt to conceal or misrepresent the truth—such as perjury or the destruction or manipulation of evidence—"emasculate[s] the court's ability to ascertain the truth [and] necessarily strikes at the very foundations of the adversary system and the judicial process." *In re Sealed Case*, 754 F.2d 395, 401 (D.C. Cir. 1985).

In this case, one of the key factual propositions concerns whether Defendants purchased hundreds of thousands of Roche's NFR and international-variety diabetes test strips. Beginning in October of 2018, the parties engaged in discovery for the express purpose of determining, with as much certainty and accuracy as possible, the truth or falsity of this—and many other—factual propositions. *See Paul Rock Produced, LLC v. Evergreen Media Holdings, LLC,* No. 2:14-499,

2018 U.S. Dist. LEXIS 68006, at \*4 (M.D. Fla. Feb. 22, 2018) ("Litigation is the search for the truth and discovery exists to uncover that truth.")

Although the Mingas may wish, sincerely and fervently, that reality were different, the court cannot permit any party to "defile" the "very temple of justice" by creating and projecting a false reality. *Chambers,* 501 U.S. at 46. For this reason alone, the Mingas' behavior merits the highest degree of sanction. *See, e.g., Chemtall Inc.*, 992 F. Supp. at 1409.

But beyond maintaining the integrity of the judicial process, courts often invoke two other justifications for issuing case-ending sanctions: (1) punishment, *Eagle Hosp. Physicians,* 561 F.3d at 1307, and (2) deterrence, *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). Also, as a purely practical matter, the court agrees with Roche's assessment that permitting the suit to proceed is futile when "[n]either the [c]ourt nor Roche can have any confidence that anything Defendants produce going forward is accurate and authentic, or that anything they argue has a good-faith basis." (Doc. 363 at 42.)

In this case, Defendants cite to no examples of any court that failed to issue case-ending sanctions once the court conclusively determined that a party produced doctored evidence. "When a party fabricates a document or provides false evidence relating to a key issue in a case, courts have made clear that the appropriate sanction is the ultimate sanction of dismissal." *Access Innovators, LLC v. Usha Martin, LLC*, No. 1:09-cv-2893, 2010 U.S. Dist. LEXIS 152303, at \*9 (N.D. Ga. Apr. 28, 2010). *See also Vargas*, 901 F. Supp. at 1581 (finding that case-ending sanctions are especially appropriate "where a party manufactures evidence which purports to corroborate its substantive claims"); *Franklin Livestock, Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, 251 F. Supp. 3d 962, 970 (E.D.N.C. 2017) *aff'd*, 721 F. App'x 263, 263 (4th Cir. 2018) (entering default judgment even after a defendant, on its own, admitted that it had

doctored evidence and subsequently produced the authentic evidence); *Chemtall, Inc.,* 992 F. Supp. At 1410; *McDowell*, No. 95-00609, 1996 U.S. Dist. LEXIS 19558, at *27 (M.D. Fla. Nov. 4, 1996); *Qantum*, 473 F. Supp. 2d at 1269 ("the need for sanctions is heightened when the misconduct relates to the pivotal or linchpin issue in the case," and such misconduct "militates heavily in favor of the severe sanction of default.").

Here, Defendants' doctored evidence directly relates to a linchpin issue of the case because the invoices demonstrate the essence of Roche's allegations: that Defendants purchased NFR test strips but then falsely sold and adjudicated them as retail test strips. By doctoring these invoices and then refusing to acknowledge their fraud, Defendants prejudiced Roche by forcing it to spend hundreds of hours and hundreds of thousands of dollars to seek the truth elsewhere. (Doc. 363 at 42.)

Lastly, although the authentic invoices support Roche's substantive claims—and the court previously determined that Roche demonstrated a substantial likelihood of success on the merits of at least some of its claims (Doc. 290 at 3)—the court's ruling on Roche's motion for sanctions does not reflect any further determination concerning the parties' substantive claims or defenses. *See Malautea*, 987 F.2d at 1544 ("[T]he probable merit of a litigant's case does not preclude the imposition of a default judgment sanction against that litigant.") The instant ruling merely determines that four Defendants defrauded both Roche and the court—and that default judgment is the appropriate punishment and remedy.

**Conclusion**

Roche asks the court to grant default judgment against Phil and Konie Minga and all Corporate Defendants. Because Roche failed to specifically allege or provide evidence to clearly and convincingly demonstrate that all 34 of the Corporate Defendants engaged in bad-faith

behavior, the court will DENY Roche's motion regarding all Corporate Defendants except Medpoint Advantage, LLC (including "Medpoint, LLC") and Priority Healthcare Corp.

Conversely, because Roche presents clear and convincing evidence that Phil Minga; Konie Minga; Priority Healthcare Corp; and Medpoint Advantage, LLC (including "Medpoint, LLC") engaged in sanctionable conduct by producing hundreds of falsified documents in discovery and then refusing to acknowledge their fraud, the court will GRANT Roche's motion to sanction these four Defendants and enter DEFAULT JUDGMENT against them.

Pursuant to Roche's request for an inquest, the court will ORDER a hearing before the court, set at 10:00 a.m. on Tuesday, June 16, 2020 in Courtroom 5A of the Hugo L. Black Federal Courthouse in Birmingham, Alabama to determine the appropriate amount of damages. *See Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (holding that a court may determine a plaintiff's damages following a default judgment by either "a hearing or a demonstration by detailed affidavits establishing the necessary facts.")

Roche SHALL submit evidence to the court to support the claimed amount of damages by May 26, 2020. Sanctioned Defendants SHALL submit any rebuttal evidence by June 4, 2020. The parties *may* also submit briefs by the same respective dates, if they so desire.

**DONE** and **ORDERED** this 8th day of May, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE