# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROCHE DIAGNOSTICS CORPORATION, et al.,** | ) ) ) |
| **Plaintiffs,** | ) ) ) **Civil Action No.: 2:18-cv-01479-KOB-HNJ** |
| **vs.** | ) ) |
| **PRIORITY HEALTHCARE CORPORATION, et al.,** | ) ) ) |
| **Defendants.** | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Phillip Minga's "Motion to Set Aside Default Judgment" (doc. 489) and Defendants Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC's "Motion to Set Aside Default" (doc. 491). The court refers to these five Defendants as the "Defaulted Defendants." Plaintiffs Roche Diagnostics Corporation and Roche Diabetes Care, Inc., filed a response in opposition to the Defaulted Defendants' motions. (Doc. 495). The motions are ripe for review. For the reasons discussed below, the court DENIES the Defaulted Defendants' motions to set aside the default judgment.

### I.   Background

Roche—an international healthcare conglomerate and diabetic test strip manufacturer—filed the instant suit on September 11, 2018, bringing claims against approximately 40 Defendants for common law and statutory fraud, conspiracy to commit fraud, negligent misrepresentation, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act. (Docs. 1, 90, 306). Roche alleges that both Individual and Corporate

Defendants[1] submitted fraudulent rebate adjudications to insurance companies and pharmacy benefit managers (PBMs) for Roche's test strips, costing Roche more than $30 million. Roche avers that spouses Konie and Phillip Minga led the enterprise, with Konie Minga owning the Corporate Defendants and Phillip Minga acting as the de facto director of the scheme. Roche specifically contends that the primary Corporate Defendant, PHC, owns or operates all the other Corporate Defendants as subsidiaries for the purpose of generating, submitting, and processing fraudulent insurance claims related to Roche's test strips.

On January 3, 2020, Roche moved the court to issue case-ending sanctions. (Doc. 362). On May 8, 2020, the court entered case-ending sanctions—a default judgment—against five of the Defendants—Phillip Minga; Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC. (Doc. 424). In the memorandum opinion accompanying its order, the court reasoned that issuing case-ending sanctions was appropriate because evidence "clearly and convincingly" showed that the Defaulted Defendants "engaged in egregious bad-faith behavior by falsifying hundreds of key discovery documents and refusing to acknowledge their fraud," undermining the integrity of the judicial process. (Doc. 423 at 2).

On June 8, 2020, Defaulted Defendant Phillip Minga and Defaulted Defendants Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC filed motions to set aside the default. (Docs. 442, 443). Shortly thereafter, the Defaulted Defendants filed for bankruptcy, and the court stayed the case and struck the motions to set aside the default.

---

[1] The court has identified which Defendants are the "Individual Defendants" and which Defendants are the "Corporate Defendants" in a previous memorandum opinion. (Doc. 212 at 2–3 nn. 1–2).

(Doc. 446). On October 21, 2020, shortly after Defendants' bankruptcy cases were dismissed, the court lifted the stay. (Doc. 480). On October 29, 2020, Defendant Phillip Minga refiled his Motion to Set Aside Default Judgment. (Doc. 489). Defendants Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC also refiled a Motion to Set Aside Default, adopting and incorporating Mr. Minga's arguments. (Doc. 491).[2]

## II. Legal Standard

Under Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for good cause and set aside a final default judgment in accordance with Rule 60(b). The Advisory Committee notes to the 2015 amendment of Rule 55 state that

> Rule 55(c) is amended to make plain the interplay between Rules 54(b), 55(c), and 60(b). A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b). *Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time.* The demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment.

Fed. R. Civ. P. 55(c) advisory committee's note (emphasis added).

In his motion to set aside default judgment, Defendant Phillip Minga argues that the court should have entered a default, not a default judgment, because "the issue of damages, if any, has not been determined." (Doc. 489 at 2). As the court explains further below, the court did not err in entering a default judgment instead of a mere default. Mr. Minga makes this argument in part

---

[2] Ms. Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage join in Mr. Minga's arguments in their Motion to Set Aside Default. (Doc. 491). Throughout this opinion, the court refers to Mr. Minga's arguments for ease of reading. Mr. Minga's arguments are, however, joined by the other Defaulted Defendants, and the court's analysis applies to all the Defaulted Defendants.

because he would like the court to apply the "good cause" standard, rather than the Rule 60(b) standard in reviewing his motion to set aside the default. For a normal default judgment, Rule 54(b) is the appropriate standard to apply because a default judgment that does not resolve all claims among all parties is not a final judgment. However, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief" when considering a motion to set aside an entry of default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–52 (11th Cir. 1996).

Plaintiffs argue that the Defaulted Defendants' motions are more properly characterized as motions for reconsideration, not motions to aside the default judgment. Even if the court considers the motions as motions for reconsideration, Rule 54(b) is the standard, as Rule 54(b) is the more proper standard of review for interlocutory orders, rather than Rule 59(e). Under Rule 54(b), a court may revise "any order or other decision . . . that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties" at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Whether to grant a motion to reconsider under Rule 54(b) is "committed to the sound discretion of the district judge." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993).

Rule 54(b) "does not delineate the parameters of a district court's discretion to reconsider interlocutory orders, [but the Eleventh Circuit] ha[s] at least indicated that Rule 54(b) takes after Rule 60(b)." *Hermann v. Hartford Life & Accident Ins. Co.*, 508 Fed. Appx. 923, 927 n. 1 (11th

Cir. 2013) (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990)). Under Rule 60(b), a court may provide relief for reasons such as "mistake, inadvertence, surprise, or inexcusable neglect" and "any other reason that justifies relief." But the court finds that no reason justifies relief from its previous order issuing a default judgment against the Defaulted Defendants.

### III. Discussion

On June 10, 2020, this court stayed this case after the Defaulted Defendants filed a suggestion of bankruptcy. (Doc. 446). In staying the case, the court also struck the first motions to set aside default Mr. Minga and the Defaulted Defendants filed. (*Id.*). In its order, the court stated, "Even if the court considered the motions for reconsideration on their merits, the court would deny both of them for the reasons explained in the memorandum opinion accompanying the order granting default judgment." (*Id.*). The court now DENIES the Defaulted Defendants' motions to set aside default judgment for the reasons explained below, as well as the reasons explained in the memorandum opinion accompanying the order entering default judgment (doc. 423).

#### A. Entry of Default vs. Default Judgment

Mr. Minga first argues that the court erred in entering a default judgment, rather than an entry of default, because the issue of damages has not yet been determined. (Doc. 489 at 2). Typically, two steps lead to a default judgment: first, an entry of default and second, an entry of default judgment. Fed. R. Civ. P. 55. Here, the court entered default judgment as a sanction; an entry of default was never entered because default is typically used when a party fails to answer or otherwise defend.

5

In support of his assertion that the court erred in entering default judgment, Mr. Minga points to the Eleventh Circuit's opinion in *SEC v. Smyth*, 420 F.3d 1225 (11th Cir. 2005). In *Smyth*, the Eleventh Circuit held that a district court erred when it granted a motion for "final judgment" without an evidentiary hearing. *Id.* at 1233. In considering whether the district court had abused its discretion in not granting an evidentiary hearing, the Eleventh Circuit cited approvingly the Seventh Circuit's opinion in *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335 (7th Cir. 2004). *Smyth*, 420 F.3d 1225, 1231. In *Lowe*, the Seventh Circuit stated:

> The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of default judgment. *The default is entered upon the defendant's failure to plead or otherwise defend*, Fed. R. Civ. P. 55(a), but if an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those proceedings must be conducted before the judgment is entered.

*Lowe*, 361 F.3d 335, 339–40 (7th Cir. 2004) (emphasis added).

Mr. Minga relies on this language to support his argument that a "'judgment' cannot be entered before a proceeding to establish the amount of the judgment (if any), i.e. the money damages." (Doc. 509 at 2). But he ignores the Seventh's Circuit's explanation of when a default is entered: "upon the defendant's failure to plead or otherwise defend." The Defaulted Defendants have failed to do many things, but they have not failed to defend, making a "default" irrelevant and improper.

"[T]he controlling issue," Mr. Minga continues his argument: "is whether a proceeding is necessary to determine the amount of the judgment (money damages)." (*Id.*). In response, Roche argues that Mr. Minga's argument is "a purely semantic one." (Doc. 495 at 10). The court finds that, under Eleventh Circuit law, the court properly entered default *judgment*.

6

The court has imposed default judgment as to liability but not a *final* default judgment awarding damages. As Plaintiffs point out, the Eleventh Circuit has referred to "the sanction of a default judgment." *See Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir. 1993) ("In this case, the defendants richly deserved the sanction of default judgment"). The Eleventh Circuit has also repeatedly referenced district courts imposing default judgment when damages have not yet been determined. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1265 (11th Cir. 2003) (referring to a district court entering default judgment and then scheduling an evidentiary hearing as to damages); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007) (stating that the "district court entered default judgment against [Defendants] on liability, and set a trial on damages before a jury"); *Adolph Coors v. Movement Against Racism and the Klan*, 777 F. 2d 1538, 1543 (11th Cir. 1985) ("The only effective remedy was the entry of a default judgment and assessment of damages.").

Unlike the Seventh Circuit, which—only speaking to a failure to defend—stated in *Lowe* that "if an evidentiary proceeding or other proceedings are necessary in order to determine what the judgment should provide . . . those proceedings must be conducted before the judgment is entered," the Eleventh Circuit appears to have made a distinction between entering default judgment as to liability and entering *final* default judgment awarding damages. *Compare Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339–40 (7th Cir. 2004) with *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1265 (11th Cir. 2003); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007); and *Adolph Coors v. Movement Against Racism and the Klan*, 777 F. 2d 1538, 1543 (11th Cir. 1985).

Indeed, multiple district courts within the Eleventh Circuit have imposed a default judgment when damages have not yet been determined. *See Hinson v. Webster Industries*, 240 F.R.D. 687, 689 (M.D. Ala. Feb. 8, 2007) (discussing the court's entering a default judgment as to liability and then setting a hearing to determine damages); *Dixie Group v. Meadows*, 2010 WL 11603085, at *2 (N.D. Ga. Jan. 12, 2010) ("The default judgment, however, is not final, because the Court has not yet computed damages."); *Intercontinental Hotels Grp., Inc. v. Weis Builders, Inc.*, 2007 WL 2705559, at *1 n. 1 (N.D. Ga. Sept. 12, 2007) (referencing "cases where default judgment has been entered but is not final because damages have yet to be computed").

Here, the court entered default judgment as to liability as a sanction for the Defaulted Defendants' bad-faith behavior. Federal Rule of Civil Procedure 55(b)(2) provides that "[t]he court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to *enter or effectuate* judgment, it needs to: (A) conduct an accounting; [or] (B) determine the amount of damages . . ." (emphasis added). Here, the court has decided to conduct a hearing to determine the amount of damages. Once it does so, it will enter *final* default judgment against the Defaulted Defendants for including damages.

Under Eleventh Circuit law, Mr. Minga's argument that the court erred in entering default judgment as to the Defaulted Defendants' liability fails.

B. Setting Aside the Default Judgment

Mr. Minga urges the court to set aside its "draconian" default judgment and decide the case on the merits. (Doc. 489 at 3–4). As Roche notes in its response to Mr. Minga's motion, Mr. Minga rehashes a number of arguments he made in opposition to Roche's initial motion for sanctions. (Doc. 496 at 7). Mr. Minga argues that the Defaulted Defendants should not be held

8

liable for action or inaction of their former counsel, that sanctions were inappropriate because the misconduct occurred prior to the filing of the Second Amended Complaint, and that the Defaulted Defendants were not personally involved in discovery misconduct. (Doc. 489). As to the argument that the Defaulted Defendants should not be liable for former counsel's failure to correct "falsified discovery documents," the court previously rejected the Defendants' argument that it was their attorneys' conduct that should be sanctioned. (Doc. 423 at 4–5). The Defaulted Defendants falsified the documents, not their attorneys.

The court also explicitly rejected Mr. Minga's argument that sanctions were inappropriate because the misconduct occurred before the filing of the Second Amended Complaint, stating that "Phil Minga's alleged misdeeds relate[d] to the case currently before the court." (*Id.* at 13). Lastly, this court previously found that case-ending sanctions were appropriate because evidence "clearly and convincingly" showed that the Defaulted Defendants "engaged in egregious bad-faith behavior by falsifying hundreds of key discovery documents and refusing to acknowledge their fraud," undermining the integrity of the judicial process. (*Id.* at 2). The court stated that "Roche's allegations and evidence pertaining to PHC; Medpoint Advantage, LLC [as well as Medpoint, LLC]; Phil Minga; and Konie Minga are particularized and convincing." (*Id.* at 10). The court also stated that "Roche [] provided clear evidence that Medpoint Advantage [as well as Medpoint, LLC] and PHC—acting through owners and operators Phil and Konie Minga—deliberately perpetrated fraud on Roche and the court by altering hundreds of critical discovery documents." (*Id.* at 11).

The court explained at length its decision to use its inherent power to issue case-ending sanctions against the Defaulted Defendants in its previous memorandum opinion and

9

does not need to repeat all of its reasoning here. The Defaulted Defendants displayed an intentional disregard for the proceedings before this court and offered no evidence of any kind in response to Roche's motion for sanctions. (Doc. 423 at 8). In their response to the Defaulted Defendants' motions to set aside the default judgment, Roche argues that the Defaulted Defendants continue to act in bad faith. (Doc. 495 at 5). The court does not need to consider the Defaulted Defendants' conduct since the time the default judgment was entered. The Defaulted Defendants have given the court no just reason to set aside its default judgment. For the reasons explained above, the court **DENIES** the Defaulted Defendants' motions to set aside the default judgment. The court will schedule a hearing to determine damages by separate order.

DONE and ORDERED this 28th day of January, 2021.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE