IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROCHE DIAGNOSTICS CORPORATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civil Action No.: 2:18-cv-01479-KOB-HNJ ) ) |
| PRIORITY HEALTHCARE CORPORATION, et al., | ) ) ) ) |
| Defendants. | |

# MEMORANDUM OPINION

In a status conference on October 21, 2020, the court requested that the parties in this case submit letters pointing the court to previous briefs discussing whether the Defaulted Defendants—Phillip Minga; Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC—have a right to a trial by jury on the issue of damages. The Defaulted Defendants and Roche both did so. (Docs. 485, 486, 488). For the reasons explained below, the court finds that the Defaulted Defendants are not entitled to a jury trial on the issue of damages. The court also finds that it may proceed with a damages hearing as to the Defaulted Defendants, even though the liability of the non-defaulted defendants has not yet been determined. Further, the court sets the damages hearing—to be held exclusively by Zoom because of the extenuating circumstances of the COVID-19 pandemic—for February 24, 2021, at 10:00 a.m.

## I. Background

On May 8, 2020, the court entered case-ending sanctions—a default judgment—against five of the Defendants in this case—Phillip Minga; Konie Minga; Priority Healthcare

Corporation; Medpoint, LLC; and Medpoint Advantage, LLC. (Doc. 424). The court set a damages hearing for June 16, 2020, ordered Roche to submit evidence to support the claimed amount of damages, and ordered the Defaulted Defendants to submit any rebuttal evidence. (*Id.*).

Roche submitted a brief and evidence regarding damages calculations (docs. 435, 436), and Mr. Minga and the other Defaulted Defendants filed memoranda in opposition (docs. 439, 441).

Shortly thereafter, the Defaulted Defendants filed for bankruptcy, and the court stayed the case. (Doc. 446). On October 21, 2020, shortly after Defendants' bankruptcy cases were dismissed, the court lifted the stay. (Doc. 480). The court is now ready to proceed with a damages hearing as to the Defaulted Defendants.

In response to the court's request for letters on the issue of entitlement to a jury trial, Mr. Minga pointed the court to his Memorandum in Opposition to Plaintiffs' Damages Claims (doc. 439), and Roche directed the court to a reply brief it filed in its September 2020 motion to modify stay (doc. 470 at 6 n. 6). (Docs. 485, 488). In their letter, Defaulted Defendants Konie Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage, LLC, joined in Mr. Minga's positions and arguments. (Doc. 486).[1]

In addition to addressing the issue of entitlement to a jury trial in his letter, Mr. Minga raised the issue of whether damages can be determined on a bifurcated basis when liability and damages have not yet been determined as to the non-defaulted defendants—arguing that the

---

[1] Ms. Minga; Priority Healthcare Corporation; Medpoint, LLC; and Medpoint Advantage join in Mr. Minga's arguments in their letter. (Doc. 486). Throughout this opinion, the court refers to Mr. Minga's arguments for ease of reading. Mr. Minga's arguments are, however, joined by the other Defaulted Defendants, and the court's analysis applies to all the

2

question is related to the issue of his entitlement to a jury trial. He also argued for an in-person damages hearing and discussed the standard of proof for determining damages. (Doc. 485). Roche responded. (Doc. 488). Although the court did not ask the parties to address those issues, the court addresses each of them briefly below.

## II. Discussion

### A. Right to Trial by Jury

Under Federal Rule of Civil Procedure 55(b)(2), a court *may* conduct hearings—preserving any federal statutory right to a jury trial—when it needs to "determine the amount of damages" to "enter or effectuate a [default] judgment." Defaulting parties do not have a right to a jury trial under the Seventh Amendment; they only have a right to a jury trial if the underlying federal statute provides for one. *Henley v. Coosa Pines Golf Club LLC*, 2011 WL 123228009, at *5 n.5 (N.D. Ala. Feb. 15, 2011). *See also In re Dierschke*, 975 F. 2d 181, 185 (5th Cir. 1992) ("[I]n a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages.") (internal quotations and citation omitted); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A]fter a default judgment has been entered . . ., a party has no right to a jury trial under either Fed. R. Civ. P. 55(b)(2), which authorizes a district court to hold an evidentiary hearing to determine the amount of damages, or the Seventh Amendment); *Olcott v. Del. Flood Co.*, 327 F. 3d 1115, 1124 (10th Cir. 2003) ("Defendants do not have a constitutional right to a jury trial following entry of default.").

---

Defaulted Defendants.

3

Here, the underlying federal statute is the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1961 *et seq.* The RICO statute does not contain a right to a jury trial outside of the Seventh Amendment.

Mr. Minga states that "it is plainly within this [c]ourt's *discretion* to grant the [sic] Mr. Minga's request for a jury trial as to damages based on his timely demand." (Doc. 485 at 5) (emphasis added). He points the court to a string of cases in which juries made damages determinations. (*Id.*). Roche responds that "Defendants cite no case . . . in which a court has held a jury trial on damages following the imposition of default judgment on RICO claims as a sanction, much less one holding that a defendant has a *right* to a jury trial in such circumstances as a matter of law." (Doc. 488 at 2). Roche argues the Defaulted Defendants "surrendered their right to proceed before a jury when they elected to undermine the integrity of the [court's] proceedings by 'defraud[ing] both Roche and the court.'" (*Id.* at 2–3).

While the court *could*, within its discretion, grant the Defaulted Defendants' request for a jury trial, the Defaulted Defendants are not *entitled* to a jury trial on the issues of damages. The court will thus proceed with a bench hearing on the issues of damages.

### B. Bifurcated Basis

The court now turns briefly to the issue of awarding damages on a bifurcated basis. In his letter to the court, Mr. Minga argues that "the damages determination as to the defaulted Defendants must await a determination of liability as to all the Defendants." (Doc. 485 at 1; *see also* Doc. 439 at pp. 2–4). Mr. Minga points the court to the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) and the Eleventh Circuit's decision in *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499 (11th Cir. 1984) to support his

4

argument.

In *Frow*, the Supreme Court stated that "a defaulting defendant has merely lost his standing in court" and that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." In *Gulf Coast*, Mr. Minga argues, the Eleventh Circuit expanded "upon *Frow*'s applicability," stating that it was "incongruous and unfair to allow" a plaintiff to collect judgment from a defaulted defendant when the jury might find a non-defaulted defendant to be liable. (Doc. 485 at 2); *Gulf Coast Fans*, 740 F.2d at 1512.

In response, Roche argues that *Frow* was displaced by Federal Rule of Civil Procedure 54(b). (Doc. 488 at 4 n. 4). The court agrees with Roche.

Roche points the court to *Int't Controls Corp. v. Vesco*, 535 F.2d 742, 746 n. 4 (2d Cir. 1976), in which the Second Circuit stated that "it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)," as that rule sets out procedural rules for cases involving multiple parties. In particular, Rule 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Roche argues that *Gulf Coast* is distinguishable because in that case, the Eleventh Circuit found that the district court had abused its discretion by not setting aside a default judgment. (Doc. 488 at 4 n. 4).

Mr. Minga argues that because Roche requested in its Second Amended Complaint "an order entering judgment in favor of Roche against Defendants, joint and severally," (doc. 306 at 94), "the damages are the same, regardless of the defendant" and determining damages as to the Defaulted Defendants would be premature and could lead to inconsistent results. (Doc. 485 at 3–

5

4). For example, the Defaulted Defendants could pay damages while the non-defaulted defendants are absolved of liability completely or the defaulted defendants could pay fewer damages than the non-defaulted defendants. (*Id.* at 4). Mr. Minga argues that the possibility of inconsistent results is "not cured by Roche's non-committal stance of possibly abandoning the pursuit of damages against the non-defaulted defendants." (*Id.*).

Generally, the best practice for courts is to avoid entering a final default judgment when multiple, similarly situated defendants are in an action. "Courts have long expressed reluctance to enter default judgment against a subset of defendants in a multiple-defendant action before the action is concluded, given the possibility that the defaulting defendants and non-defaulting defendants are similarly situated or, potentially, jointly liable." *Will-Burn Recording & Pub. Co. v. Universal Music Group Records*, 2009 WL 211082, at *1 (S.D. Ala. Jan. 26, 2009). Courts are reluctant to enter default judgment because doing so can "risk inconsistent and incongruous results in [the] litigation." *Id.*

Here, the court did not enter default judgment because of the Defaulted Defendants' failure to plead or otherwise defend. Default judgment was entered as a *case-ending sanction* for the Defaulted Defendants' defrauding the court. And as Roche points out, "the Defaulted Defendants' liability is beyond dispute *regardless* of the factual record that underlies Roche's claims." (Doc. 488 at 4 n.4). The Defaulted Defendants will not escape liability even if other defendants in this case are found not to be liable. While the court would usually be reluctant to enter final default judgment in a case with multiple defendants, here the court finds "no just reason for delay" in determining damages as to the Defaulted Defendants and entering final

6

judgment. If liability is ultimately imposed on the non-defaulted Defendants, any amount paid by the Defaulted Defendants would offset what the other Defendants owe.

### C. In-Person v. Zoom Hearing

Mr. Minga requests that if the court proceeds with a damages hearing, the court hold an in-person hearing. (Doc. 485 at 5). Mr. Minga argues that a non-jury hearing requires the court to "make findings of fact and determinations as to credibility" and such findings and determinations are not suitable for a virtual hearing. (*Id.* at 6). While this court generally prefers in-person proceedings, the COVID-19 pandemic has forced the court system to be flexible. The court has held countless virtual proceedings during the pandemic and is capable of assessing the evidence regarding damages and credibility in this case at a virtual hearing.

### D. Standard for Determination of Damages

Lastly, Mr. Minga argues that Roche must prove damages by reasonable certainty by introduction of admissible evidence through witnesses. (Doc. 485 at 6). Mr. Minga asserts that he has a right to cross examine those experts and witnesses. (*Id.*). In response, Roche argues that it "need only to put forth enough evidence to assure this Court that 'there is a legitimate basis for any damage award it enters.'"(Doc. 488 at 3) (quoting *Cabbil v. Resource Horizons Grp., LLC,* 2015 WL 1840476, at *2 (N.D. Ala. Apr. 22, 2015)). The court agrees with Roche.

The Eleventh Circuit has held that "[d]amages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F. 2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854,

857 (5th Cir. 1979)). The language of Federal Rule of Civil Procedure 55(b) is permissive, stating that "[t]he court may conduct hearings or make referrals—when, to enter or effect judgment, it needs to . . . determine the amount of damages." A court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.4d 1264, 1266 (11th Cir. 2003). The court may either hold a hearing that "meaningfully inform[s] the judgment" or it may utilize "mathematical calculations" and "detailed affidavits" to determine the appropriate amount of damages. *Adolph Coors*, 777 F.2d at 1544. Here, the court has chosen to hold a hearing. How it conducts such a hearing is up to the court.

For the reasons explained above, the court finds that the Defaulted Defendants are not entitled to a jury trial on the issue of damages. The court finds that it may proceed with a damages hearing as to the Defaulted Defendants, even though the liability of the non-defaulted defendants has not yet been determined. Lastly, the court sets the damages hearing—to be held exclusively by Zoom because of the extenuating circumstances of the COVID-19 pandemic—for February 24, 2021, at 10:00 a.m.

DONE and ORDERED this 28th day of January, 2021.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE